■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BOBBY HADID, Appellant. [993 NYS2d 754]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Marrus, J.), rendered December 6, 2012, convicting him of perjury in the first degree, after a nonjury trial, and imposing sentence.

Ordered that the judgment is reversed, on the law, the indictment is dismissed, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent with CPL 160.50.

The defendant, Bobby Hadid, was a member of the New York City Police Department (hereinafter NYPD), who, together with other members of the NYPD, traveled to Paris, France, where Hadid served as a translator for certain NYPD officers who were investigating an individual named Marien Kargu as a suspect in a homicide that had been committed in New York.

Thereafter, Kargu was arrested and extradited to New York and charged with murder in the second degree and other related crimes under Kings County indictment No. 168/09. Kargu's girlfriend, a French citizen, who had traveled to Paris with Kargu from New York, also was a suspect but was not arrested or extradited.

At Kargu's trial, Hadid testified that he did not have a role in the investigation. His responsibility was to translate for the NYPD detectives who were conducting the investigation. Hadid testified that after Kargu had been taken into custody by the French police, he translated Kargu's confession. Hadid also testified that he had gone with NYPD detectives to Paris and that he and the detectives had first met with Kargu and his girlfriend at an apartment that Kargu and his girlfriend shared in Paris. On cross-examination, Kargu's attorney inquired about communication that Hadid had with Kargu's girlfriend after he had met her in connection with the investigation. Kargu's counsel asked, "Well, you indicated that the last time you had communication with her, correct me if I am wrong, was at or around the time she was in French custody, correct?" Hadid replied, "That is correct. Yes, sir, I said that." Kargu's counsel then introduced a series of email exchanges that had occurred between Hadid and Kargu's girlfriend after Kargu had been arrested. Hadid then admitted that he had communicated with Kargu's girlfriend since the time that he had provided translation services for the NYPD detectives.

Following Kargu's trial, Hadid was charged with one count of perjury in the first degree and one count of perjury in the third degree in connection with his testimony at Kargu's trial, and similar counts of perjury in the first and third degrees for his testimony at Kargu's pretrial suppression hearing. The prosecution contended, in effect, that Hadid had falsely stated under oath that he did not have communication with Kargu's girlfriend after his contact with her when she had been in the custody of the French police.

At Hadid's nonjury trial, the prosecution's case included the testimony of three witnesses: one of the detectives with whom Hadid had gone to Paris, the French translator at the Kargu trial who testified to the meaning of certain statements Hadid had written in emails to Kargu's girlfriend, and the assistant district attorney who had prosecuted the case against Kargu. In addition to the witness testimony, the prosecution's evidence consisted of the emails Hadid had written, together with their English translation, the file of the Supreme Court, Kings County, for the Kargu matter, an NYPD patrol guide, and the

written decision of Supreme Court Justice Raymond Guzman, denying Kargu's motion to suppress his statements. Hadid introduced evidence consisting of a police report prepared by an NYPD detective memorializing the interview with Kargu's girlfriend, the transcripts of Hadid's testimony at Kargu's suppression hearing and Hadid's testimony at the trial, as well as the entire transcripts of Kargu's trial, Hadid's business card that he had given to Kargu's girlfriend, Hadid's Algerian, American, and FBI official passports, and the bill of particulars filed by the prosecution as to the charges pending against Hadid. At the completion of the trial, Hadid was convicted of perjury in the first degree in connection with his sworn testimony at the criminal trial. We reverse the judgment.

To establish that a person is guilty of perjury in the first degree, the prosecution must prove, beyond a reasonable doubt, that the person has sworn falsely and that the false statement consists of testimony that is material to the action, proceeding, or matter in which it is made (Penal Law § 210.15; *see People v Tyler*, 62 AD2d 136, 141 [1978], *affd* 46 NY2d 251 [1978]).

Viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was legally insufficient to establish Hadid's guilt of perjury in the first degree beyond a reasonable doubt (*see People v Perillo*, 48 AD2d 862 [1975]). As a matter of law, the evidence failed to establish that Hadid had made a false statement under oath. To prove falsity, the prosecution must show that the witness was intentionally, rather than mistakenly, testifying falsely (*see People v Tyler*, 46 NY2d at 262; *People v Rosano*, 69 AD2d 643 [1979], *affd* 50 NY2d 1013 [1980]; *People v Dwyer*, 234 AD2d 942, 942 [1996]). To determine intent, the court will look at whether the statement at issue related to a memorable fact, the significance of the event at the time it occurred, the line of inquiry of the examiner, and whether a fact was deliberately concealed if concealment is alleged (*see People v Tyler*, 46 NY2d at 262; *People v Rosano*, 69 AD2d at 659).

The evidence does not support the prosecution's contention that Hadid deliberately concealed the fact that he had communicated with Kargu's girlfriend by falsely averring during Kargu's trial that he had not had contact with Kargu's girlfriend after she had been in the custody of the French police. The evidence shows that, contrary to the prosecution's contention, Hadid never said that he did not have contact with Kargu's girlfriend after she had been in the custody of the French police. Rather, in response to counsel's question as to whether Hadid had previously said that, Hadid answered, "That is cor-

rect. Yes sir, I said that[,]" when, in fact, he had not previously made such a statement.

The prosecution did not establish that Hadid had a conscious objective to give a false statement or to deliberately conceal the fact that he had had communication with Kargu's girlfriend after his initial contact with her (*see People v Tyler*, 46 NY2d at 262; *People v Rosano*, 69 AD2d at 659). Rather, the evidence submitted supports the conclusion that Hadid's statement was a mistake. Preceding the testimony at issue, Kargu's attorney had examined Hadid about his first meeting with Kargu and Kargu's girlfriend. When asked whether he had had any communication with Kargu's girlfriend between the time of Kargu's arrest and the day of the trial, Hadid responded that he may have. When Kargu's counsel inquired as to the circumstances under which Hadid had communicated with Kargu's girlfriend, Hadid responded by referencing the communication he had had with Kargu's girlfriend together with the NYPD detectives and French police at Kargu's apartment. Thereafter, Hadid admitted that he had had contact with Kargu's girlfriend and acknowledged that he had sent emails to her, which were written after she left the French police. Moreover, the prosecution made no effort to elicit information from Hadid to clarify his response to the inquiry by Kargu's counsel (*see People v Tyler*, 46 NY2d at 260-261).

In short, the prosecution failed to prove that Hadid intentionally made a statement he did not believe to be true (*see* Penal Law § 210.00 [5]). Neither Hadid's responses to the questions posed to him nor any other evidence provided by the prosecution established the requisite element of the crime—an intent to make a false statement under oath (*see id.* at 262; *People v Rosano*, 69 AD2d at 659).

The People also failed to establish beyond a reasonable doubt that Hadid's statements were material to the Kargu trial (*see People v Tyler*, 62 AD2d at 141; *People v Perillo*, 48 AD2d at 862-863). " '[T]he test of materiality is whether the false testimony was capable of influencing the tribunal on the issue before it' " (*People v Tyler*, 62 AD2d at 145, quoting *United States v Icardi*, 140 F Supp 383, 388 [1956]).

Contrary to the prosecution's contention, neither Hadid's statements at trial nor his credibility were material to Kargu's guilt or nonguilt (*see People v Perillo*, 48 AD2d at 862). At the Kargu trial, Hadid had testified that, in Paris, he translated the detectives' *Miranda* warnings (*Miranda v Arizona*, 384 US 436 [1966]) to Kargu, Kargu's waiver of those rights, and Kargu's confession to the French police. No evidence was adduced at

Hadid's trial that the accuracy of that translation was an issue at the Kargu trial. Thus, Hadid's testimony was not material information determinative of an issue at the trial (*see People v Tyler*, 46 NY2d at 260; *People v Tyler*, 62 AD2d at 143; *People v Perillo*, 48 AD2d at 862-863). In addition, at the time Hadid gave his testimony, the trial court already had ruled that Kargu's statements to law enforcement officials in France were admissible on the grounds that the exclusionary rule was inapplicable to the statements made by Kargu in response to questions posed by a French law enforcement official, and that the New York detectives were present as observers, not as participants. Thus, the portion of Hadid's testimony regarding the *Miranda* warnings and Kargu's waiver thereof was merely background information for the jury (*see People v Tyler*, 46 NY2d at 260; *People v Tyler*, 62 AD2d at 143; *People v Perillo*, 48 AD2d at 862-863).

In addition, Hadid's contact with Kargu's girlfriend after Kargu had confessed had no bearing on Kargu's culpability (*see People v Perillo*, 48 AD2d at 862-863; *People v Ortiz*, 40 AD3d 374, 375 [2007]).

Accordingly, the evidence was legally insufficient to establish Hadid's guilt of the crime of perjury in the first degree (*see People v Perillo*, 48 AD2d at 862). Based on the foregoing, the elements of perjury in the third degree, the lesser-included offense, also were not met (*see People v Tyler*, 62 AD2d at 144).

In light of our determination, we need not address Hadid's remaining contentions. Skelos, J.P., Dickerson, Cohen and Duffy, JJ., concur.