BARBARA L. BRENNAN, Appellant, v ROBERT J. BRENNAN, Respondent.

Third Department, July 26, 1984

APPEARANCES OF COUNSEL

*Rapport, Meyers, Griffen & Whitbeck (Victor M. Meyers* of counsel), for appellant.

*Shanley & Shanley (Donald J. Shanley* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

The parties to this divorce action were married on June 16, 1958. All of the children of the marriage are now emancipated. Shortly before the marriage, the husband purchased a farm in Columbia County to be used both as a family residence and for dairy farming. The purchase price of $25,000 was financed by a mortgage, gifts from the husband's family and a $1,000 contribution from the wife. When the husband moved to the farm, he brought 32 head of cattle and equipment and machinery which had been used by him before the marriage in operating a dairy business in Connecticut. Two other houses were later erected on the property, one of which became the family dwelling. For the first two years of the marriage, the wife actively assisted her husband in the dairy business, but, with the arrival of children, she devoted herself almost exclusively to child care and keeping house. In 1979, the husband decided to restrict his business operation to raising and selling heifers. He sold off his dairy herd and, from the proceeds, paid some debts and purchased certificates of deposit worth $60,000.

In 1981, following marital difficulties, the wife moved out of the family residence and into one of the other houses on the farm. In July of that year, she commenced the instant action for divorce. A temporary support order was granted directing the husband to pay her $100 a week plus certain maintenance expenses on the house she occupied. When the case was reached for trial, the husband withdrew his answer and counterclaim and consented that the wife could obtain a default divorce on the ground of abandonment. A trial was then held on the contested financial aspects of the divorce. After the conclusion of the trial, Trial Term made a distributive award of $174,373.60 to the wife, representing 40% of what the court determined to be the parties' marital property, denied the wife any award for maintenance, but granted her counsel fees of $8,000. The court also canceled arrears on the temporary order. This appeal by the wife followed.

■ The wife contends that Trial Term erroneously denied her maintenance by disregarding the length of the marriage and her age, physical infirmities and lack of employable skills, all factors requiring consideration under the Equitable Distribution Law (Domestic Relations Law, § 236, part B, subd 6, par a, cls [2], [3]). Although subdivision 6 (par a) of this section of the Equitable Distribution Law does specify that the foregoing factors must be considered and dealt with in any decision on maintenance, the statute makes clear that they are in aid of the primary maintenance issue of what is required "to meet the reasonable needs of a party to the matrimonial action * * * as justice requires, having regard for the circumstances of the case and of the respective parties" (Domestic Relations Law, § 236, part B, subd 6, par a). The statute further directs that a determination of reasonable needs requires a comparison of the respective financial resources of the parties (Domestic Relations Law, § 236, part B, subd 6, par a). In the instant case, the wife only proved needs of $400 a week to meet her current living expenses. No proof was adduced by her that the preseparation standard of living of the parties would have required a maintenance award in excess of those needs. Since a reasonable return on the aggregate of her distributive award and separate property

from an inheritance could be expected to approximate her needs, it cannot be said that Trial Term erred in denying the wife any award for maintenance.

As to the distributive award, Trial Term found that the farm, certificates of deposit and a bond fund (acquired during the marriage by a conversion of certain life insurance policies) were marital property subject to equitable distribution. The parties stipulated to the respective values of these assets, with a total worth of $435,934. The court held that 107 head of cattle valued at $47,410 and related equipment and machinery worth $41,550 were the husband's separate property, for the stated reason that "defendant had a previously established and viable farm operation prior to the marriage of the parties". Also held to be the husband's separate property were horses and related equipment, having an aggregate value of $9,750, because they "were purchased by defendant and almost exclusively under his control as a type of hobby". Trial Term also excluded from marital property subject to equitable distribution household furniture and a 1975 automobile, appraised at $1,290 in total, which were awarded to the wife.

In our view, several errors were committed in Trial Term's disposition of the property of the parties. First, the record was insufficient to support the finding that the value of the present 107 head of cattle and farm equipment entirely constituted the separate property of the husband. Undeniably, the cattle and equipment in question were either produced or purchased *during* the marriage, and thus fell squarely within the statutory definition of marital property (Domestic Relations Law, § 236, part B, subd 1, par c). Moreover, since they did not predate the marriage and were not acquired by gift or inheritance, they could not be excluded from equitable distribution under the initial statutory definition of separate property (Domestic Relations Law, § 236, part B, subd 1, par d, cl [1]). The apparent justification for their exclusion is that, because the present herd and equipment can be considered an outgrowth of the cattle and equipment used in business by the husband before the marriage, they are covered by the further statutory definition of separate property as "property acquired in exchange for or the increase in value of separate prop-

erty" (Domestic Relations Law, § 236, part B, subd 1, par d, cl [3]). However, the husband testified that the productive life and marketable value of the 32 cattle he brought to the marriage had been totally dissipated within a relatively short period of time thereafter, coinciding generally within the time frame of the wife's active participation in the farming operations. Likewise, the equipment owned by the husband before the parties married and used initially in the business had worn out and was replaced by other equipment, paid for through postmarital profits or loans which the wife cosigned. The size of the present herd, even after the substantial sale of dairy cattle in 1979, clearly demonstrates that the husband's business and business assets experienced a manifold expansion after they were transferred from Connecticut upon the marriage of the parties. These facts, in our view, render totally inappropriate any equating of the entire current herd and equipment with "property exchanged for or the increase in value of" the comparatively modest similar assets the husband brought to the marriage.

The Equitable Distribution Law was enacted as a comprehensive reform of matrimonial law to reflect modern awareness that marriage is an economic partnership, the success of which is dependent not only upon the respective financial contributions of the partners, but also on a wide range of nonremunerated services to the joint enterprise, such as homemaking, raising children and providing the emotional and moral support necessary to sustain the other spouse in coping with the vicissitudes of life outside the home (see Governor's Memorandum, McKinney's Session Laws of NY, 1980, p 1863; see, also, *Litman v Litman,* 93 AD2d 695, 696, app dsmd 60 NY2d 586; *Forcucci v Forcucci,* 83 AD2d 169, 171; *Wood v Wood,* 119 Misc 2d 1076, 1079). Exempting from equitable distribution "separate property" which one of the spouses owned before the marriage or which was later acquired by gift or inheritance is consistent with the statutory rationale; such property cannot be considered to have been the product of the marital enterprise (2 Foster and Freed, Law and the Family [1984 Cum Supp], ch 33, preface, p 880).

The added definition of separate property, to include acquisitions during the marriage in *exchange* for the pre-

marital or gift property of one of the spouses or an *appreciation* in the value of such property, should receive a consistent interpretation limiting these categories of exclusion from equitable distribution to items which likewise cannot fairly be considered as the product of the marital partnership. This would generally presume some rough equivalency in value at the time between the premarital property and that which was acquired in exchange, not the situation presented here where depreciated premarital property was *replaced* by property greater in quantity and value which was largely produced or paid for through the activities of the marital economic partnership.

Nor could Trial Term properly exclude the wife from sharing in the current herd and equipment by deeming these items merely an increase in value of the original, separate property of the husband, because both were used in the same business which the husband originally started before the marriage. The significant expansion in business and assets of the farming operation here were not due to unrelated market factors, inflation or the efforts and skills of other principals in the business (cf. *Jolis v Jolis,* 98 AD2d 692). Instead, prosperity and growth occurred through the mutual efforts of the parties while a viable marital relationship existed, during which the wife initially directly benefited the business, pledged her personal credit for its debts and contributed indirectly to its success through her services as a homemaker and mother. These contributions were recognized by Trial Term as to other property of the parties. Certainly, if the business had been started *after* the parties married, the wife would have been entitled to some share in it even if her contributions were only indirect (see *Litman v Litman, supra; Forcucci v Forcucci, supra*). At least where, as here, significant growth in the business and its assets occurred through spousal efforts during the marriage, the rule should not be different because the business happened to have been started by one of the spouses prior to marriage. A contrary result would violate the letter and spirit of the Equitable Distribution Law. While it was thus improper for Trial Term to have excluded the total value of the present herd and equipment from equitable distribution, we think the

husband is entitled to be credited with the value of his initial capital contribution to the spousal enterprise consisting of his premarital cattle and equipment, since these also were a factor in the growth of the family business and its assets (cf. *Duffy v Duffy*, 94 AD2d 711, 712-713). A further determination will, therefore, have to be made of the value of the original 32 head of cattle and equipment when the parties married.

■ Error was also committed in Trial Term's total exclusion from equitable distribution of the interest which accrued on the certificates of deposit and the bond fund in the husband's name after the wife commenced this action. Concededly, the definition of marital property excludes property acquired by a spouse after the commencement of the action (Domestic Relations Law, § 236, part B, subd 1, par c). However, the fund and certificates were clearly marital property, and Trial Term so found. In our opinion, automatic accretions to marital property stemming solely from the incidents of ownership retain the character of their source, even when realized after the action has begun. Therefore, the accrued interest on these marital funds should have been subject to equitable distribution.

■ We also disagree with Trial Term's distribution of the horses and related equipment to the husband and of the automobile and household effects to the wife. All such items were acquired after the parties married and thus constituted marital property. There was no evidentiary basis to exclude any of them from equitable distribution as such. Therefore, while it was not improper to allot them individually to the respective spouses, the values thereof should have been accounted for by appropriate adjustments to the distributive award.

■ Finally, we cannot say that Trial Term's allocation formula awarding the wife 40% of the value of the marital property was an abuse of discretion or lacked evidentiary support in the record. The court appears to have considered the relevant, specific statutory factors and made a substantial award, which our decision enhances. Here, where the issue is allocation rather than total exclusion from equitable distribution, the fact that the family business was begun by the husband and was viable before the marriage

can validly be considered (Domestic Relations Law, § 236, part B, subd 5, par d, cls [1], [10]). Also to be weighed is the wife's substantial separate property acquired by inheritance, unmatched by equivalent independent assets of the husband (Domestic Relations Law, § 236, part B, subd 5, par d, cls [1], [10]). These factors tend to justify the limited extent to which Trial Term's allocation formula was disproportionately in favor of the husband. We also find no basis to disturb the court's discretionary cancellation of arrears on the temporary order.

On the basis of all of the foregoing, remittal is necessary, but solely for the purposes of fixing the value of cattle and equipment initially contributed by the husband when the parties married, crediting the husband with the amount so determined and recalculating the wife's distributive award consistently with the decision herein.

The judgment should be reversed and the matter remitted to Trial Term for further proceedings not inconsistent herewith.

MAHONEY, P. J., KANE, CASEY and WEISS, JJ., concur.

Judgment reversed, on the law and the facts, without costs, and matter remitted to Trial Term for further proceedings not inconsistent herewith.