■ ROBERT E. LORD, Appellant-Respondent, v KAREN LORD, Respondent-Appellant.—Yesawich, Jr., J.

The parties' various challenges meriting comment are directed at Trial Term's characterization and distribution of the marital residence, referred to as the "Briggs House"; the income-producing real property acquired during the marriage; various valuations; the denial of permanent maintenance; and the effect of "fault" on the awards made.

With respect to the Briggs House, Trial Term concluded that one half its net value was plaintiff's separate property with the other half marital property to be divided evenly. Plaintiff contends the entire property is separate property, while defendant asserts it is entirely marital property.

At the time of the parties' marriage in 1971, plaintiff, who was then 45 years of age, had acquired substantial assets as a result of real estate interests owned either individually or jointly with his father. Over the years before marrying defendant, proceeds from the sale of these properties and mortgages obtained thereon were kept in plaintiff's name.

The Briggs House was purchased in 1976 for $11,000 with

proceeds withdrawn from a credit union account where defendant was an employee, but opened initially in the joint names of plaintiff and his father; at the time of the withdrawal, this account was inexplicably in the parties' joint names. The genesis of these funds, which plaintiff satisfactorily traced into the account, was plaintiff's separate property. In the course of restoring the Briggs House, a mortgage of $12,000, on which the parties were jointly obligated, was obtained; plaintiff, over the years, also invested approximately $48,000 from his separate property in the restoration and in addition made substantial contributions of time and labor.

It is readily apparent that the property's augmented value, found to be $95,000, was, in part, the result of labors and moneys expended while the marital partnership existed (see, Nolan v Nolan, 107 AD2d 190, 193). Defendant's contribution to this partnership, in the form of homemaking and outside employment, enabled plaintiff to devote his building skills to enhancing the value of the Briggs House. Accordingly, she is entitled to a fair share of this appreciation (see, Price v Price, 113 AD2d 299, 304-306). Equally clear from the record is the fact that plaintiff's separate funds were made available for the purchase of the raw materials used in the renovations. Implicit in Trial Term's conclusion that one half of the net value of the Briggs House was plaintiff's separate property is a finding, amply supported in the record, that these funds did not lose their identity as separate property (see, Cunningham v Cunningham, 105 AD2d 997).

The income-producing real property, eight apartment buildings acquired during the marriage and adjudged to be entirely marital property, also appreciated in value in part because of defendant's contribution as homemaker and outside employment, but also in that she helped manage these properties. As to four of them (9 School Street, 72-74 3rd Street, 59 Montgomery Street, 1st Avenue—adjudged to have a total value of $72,000), we find plaintiff satisfactorily demonstrated the funds to purchase them came from an account plaintiff painstakingly maintained independent of the parties' joint funds and which contained plaintiff's separate property; they remain plaintiff's separate property. However, plaintiff's proof regarding the origin of the moneys used to buy 128 Broad Street, Yale Street and Burton Street is less compelling. Furthermore, title to these three properties was taken in the parties' joint names, and since they were purchased during the marriage, they are presumed to be marital property (see, Lischynsky v Lischynsky, 120 AD2d 824, 826). Despite plaintiff's

ability to establish that $4,015.28 of his separate funds were utilized in the purchase of the 2nd Avenue premises, the presumption adverted to, coupled with the fact that the parties took title in their joint names and assumed a mortgage on this property, representing 60% of the purchase price, leads us to join with Trial Term in its conclusion that this parcel was also marital property. Since the record evidences that plaintiff expended $31,015.28 of his separate property to acquire 9 School Street, 72-74 3rd Street, 59 Montgomery Street, 1st Avenue and 2nd Avenue, he is entitled, therefore, to a credit in this amount before the equity in the income-producing real property, which is to be divided equally between the parties, is distributed (see, Cunningham v Cunningham, supra, p 998).

Plaintiff's assertion that the value Trial Term assigned to two motor vehicles found to be marital property and retained by defendant at the time of the parties' separation was erroneous is unpersuasive. It suffices to note that he seeks to support his position by relying on an appraisal which was never received in evidence for valuation purposes owing to the absence of a proper foundation. An adjustment in the valuation of the couples' Mercedes Benz is, however, appropriate. The court arrived at its value of $11,009 by utilizing the fair market value at the time of trial and deducting the outstanding debt. We recognize there is a divergence of opinion as to the date when valuation should be fixed (compare, Roffman v Roffman, 124 Misc 2d 636, with Boffard v Boffard, 117 AD2d 643, 645, lv granted 68 NY2d 603). In our view, unless doing so would be patently inequitable, valuation of marital property is properly fixed at the commencement of the action (Brennan v Brennan, 103 AD2d 48). Accordingly, plaintiff is entitled to an adjustment in his favor of $2,028.

We reject the contention that the failure to award defendant, who is apparently 45 years of age, permanent maintenance was error. Trial Term determined there was no need to do so in light of defendant's full-time employment, income from two apartment buildings distributed to her (2nd Avenue and Yale Street), and payment to her of a distributive award of $50,000, bearing interest at the rate of 10% annually, in 144 equal monthly installments. And the record provides a basis to permit the conclusion that the court took into account the relevant statutory factors (see, Domestic Relations Law § 236 [B] [6]) in reaching this decision. We note, however, that our modification of Trial Term's decision will effect a reduction in defendant's distribution award to such an extent that

Supreme Court may, on remittal, wish to further consider defendant's maintenance request.

As for marital fault, except in egregious cases, it is not a factor for consideration in the equitable distribution of marital property. And although it may adversely affect the amount of maintenance awarded *(Stevens v Stevens,* 107 AD2d 987, 988), it cannot be the predicate for an award where, as here, maintenance is not otherwise merited.

Finally, we find no justification in the record for entertaining any of the other arguments advanced by the parties.

Judgment modified, on the law and the facts, without costs, by remitting the matter to Supreme Court for the purpose of modifying Trial Term's equitable distribution of the parties' marital property in accordance with the decision herein, and, as so modified, affirmed. Kane, J. P., Main, Yesawich, Jr., Levine and Harvey, JJ., concur.