BERNARD SIEGEL, Appellant-Respondent, v ADELE SIEGEL, Respondent-Appellant.

Second Department, December 14, 1987

## APPEARANCES OF COUNSEL

*Paul Martin Weltz* for appellant-respondent.

*Sullivan, Donovan, Hanrahan & Silliere (Vito J. Cassan* of counsel; *Gail B. Shapiro* on the brief), for respondent-appellant.

## OPINION OF THE COURT

WEINSTEIN, J. P.

The underlying matrimonial action was commenced in October 1981, was joined with two actions by creditors for necessaries furnished to the defendant wife, and did not proceed to trial until November 1984. Following a lengthy trial, a judgment dissolving the parties' marriage and distributing their substantial property was signed on January 17, 1986. The instant appeal focuses solely upon the property distribution and requires us to review the trial court's evaluation of several different marital assets.

The threshold issue in our evaluation procedure entails the selection of an appropriate valuation date for each asset in question. It bears noting, at this juncture, that evaluating each of the marital assets from a common point of reference does not necessarily yield the most equitable of results.

In *Wegman v Wegman* (123 AD2d 220, *remittitur amended* 123 AD2d 238), this court held that the date with reference to which various marital assets are to be evaluated for the purposes of equitable distribution in accordance with Domestic Relations Law § 236 (B) is to be chosen by the trial court in light of the particular circumstances presented *(cf., Lord v Lord,* 124 AD2d 930, 932 [where the Third Department held that marital property should be evaluated as of the commencement of the action, unless doing so would be "patently inequitable"]; Florescue, Domestic Relations Law, NYLJ, May 20, 1987, at 1, col 1). The *Wegman* court also recognized that a court may set different valuation dates for different assets *(see, Wegman v Wegman, supra,* at 236-237). The case now under review cogently illustrates the type of circumstances under which the use of two different valuation dates with respect to different assets may be warranted. We also have occasion, in connection with this appeal, to hold that a trial court may not, by entertaining a postjudgment motion, in effect, reevaluate a marital asset as of any date which is subsequent to the time of trial.

We now proceed to address *seriatim* the major issues raised by the parties.

## I

The marital assets whose proper valuation poses the most difficulty in this case are two closely held corporations, Harmony Carpet Corporation (hereinafter Harmony) and Visa Carpets, Inc. (hereinafter Visa). The plaintiff is the president of both of these corporations.

The plaintiff's expert testified that, in his opinion, Harmony had a value of $375,000 as of March 12, 1981. This same expert testified that Visa had a value of approximately $41,000. The expert who testified on behalf of the defendant reached a substantially different conclusion, finding that Harmony and Visa, taken together, had, as of May 31, 1981, a value of between $2,623,000 and $2,856,000, exclusive of the value of Harmony's lease and the value of a debt owed to that corporation by the plaintiff. This expert also opined that the total value of these two businesses, including the aforementioned items, would be approximately $3,000,000. We now face the task of resolving the gross disparity between the opinions of the parties' respective experts.

At the outset, we agree with the trial court that the two business enterprises should be evaluated as of the date on which the action was commenced. The court assigned a value of $1,800,000 to Harmony and Visa as of September 1981. On appeal, the plaintiff argues that the court overvalued the two corporations, in part because Harmony, by far the more valuable of the two entities, declined in value since the date the action was commenced. The plaintiff notes, for example, that Harmony had $737,640 of outstanding notes payable as of May 31, 1984, which represents a significantly higher corporate debt than that which existed as of May 31, 1981, prior to the commencement of the action.

If we were able to attribute the decline in Harmony's value to adverse economic forces, then it might well have been better to evaluate this business as of the date of the trial. However, the weight of the evidence in this case establishes clearly that Harmony was a business under the plaintiff's complete control, so that whatever true shareholder equity might have existed in the corporation as of the time this action was commenced could have been easily directed from the corporation to the plaintiff personally. Stated succinctly,

the corporation's increasing indebtedness might be more attributable to the plaintiff's diversion of equity from the corporation to himself rather than to neutral economic forces. In *Wegman v Wegman* (123 AD2d 220, 234, *remittitur amended* 123 AD2d 238, *supra),* the court noted that the date of the commencement of the action should be used to evaluate an asset whose value "significantly decreased after commencement of the action due to wasteful dissipation or other fault of the owner spouse". We do not mean to suggest that the plaintiff necessarily dissipated corporate assets or looted the corporations under his control for his own benefit. We merely hold that the possibility that such dissipation might have occurred is sufficient for the court to choose the date of the commencement of the action as the date for evaluating the two corporations.

Having chosen a date for valuation, there still remains the task of resolving the conflict between the testimony of the parties' respective expert witnesses. It is our conclusion that neither expert's opinion accurately reflects the true value of the subject corporations.

The figures advanced by the defendant wife's expert include the sum of $1,787,000 which purportedly represents the value of Harmony's "tangible net assets". This expert was compelled to substantially modify his opinion in this regard on cross-examination. More importantly, this witness was apparently unaware that a large percentage of the rug inventory possessed by these corporations consisted of rugs held on consignment. Furthermore, this expert deliberately inflated the value of such inventory so as to supposedly correspond to the values assigned to certain carpeting in connection with an insurance claim. We are not persuaded, as a matter of fact, that this technique is reliable. Accordingly, we find the opinion of the defendant's expert to be overly speculative, and therefore unworthy of belief.

The opinion advanced by the expert retained by the plaintiff husband is equally unpersuasive. A report of this expert, which was admitted into evidence, reveals that he employed a capitalization of earnings approach and applied a multiplier of 5.2 to a figure of $69,824 which represents the earnings of Harmony as "reported * * * in after tax terms". Utilizing this formula, the value of Harmony was said to be $370,000, in rounded terms.

The principal flaw in the foregoing analysis is the use of a

posttax earnings figure as the starting point in a capitalization of earnings approach. The proper methodology is to multiply, by a number derived from a consideration of various factors, an amount which represents the subject corporation's true *pretax* earnings *(see, e.g., Bofford v Bofford,* 117 AD2d 643, *appeal dismissed* 68 NY2d 808).

The credibility of this witness's opinion is further undermined by the fact that the weight of the evidence establishes beyond any doubt that the true earnings of Harmony amount to a figure much higher than that which appears on the corporation's financial statements. It is apparent from the record that Mr. Siegel used corporation funds to pay for a variety of personal expenses. Moreover, it is far from clear whether all, or even most, of such personal expenditures were reflected in a loan account maintained for Mr. Siegel by the corporation. In short, the true earnings of the corporation must be ascertained by adjusting its net income, as reflected in its financial statements, to account for the personal expenses incurred by the parties during the marriage which were paid by the corporation *(see,* 3 Foster, Freed & Brandes, Law and the Family, New York, Equitable Distribution § 15:3 [2d ed]). The plaintiff husband's expert made no attempt to ascertain the corporation's true earnings in accordance with this principle.

Having put aside the opinions of these two experts, we must exercise our independent fact-finding powers in order to arrive at an accurate evaluation of these two businesses. Given the nature of these businesses—the sale of carpeting and rugs—we believe that the capitalization of earnings approach is preferable to a method based on the evaluation of assets owned by the corporation *(cf., Wilbur v Wilbur,* 116 AD2d 953). We are persuaded that the defendant wife's expert was substantially correct in his opinion that, as of 1981, the true average annual earnings of Harmony and Visa amounted to $241,585.21. Applying to this figure the multiplier of 5.2 mentioned above, we conclude that the combined value of these two enterprises was approximately $1,256,000 as of 1981, the year this action was commenced.

## II

In contrast to the business corporations discussed above, the tangible real and personal property owned by the parties in this case should have been evaluated as of the time of the

trial. As this court recognized in the *Wegman* case *(see, Wegman v Wegman,* 123 AD2d 220, 232, *remittitur amended* 123 AD2d 238, *supra),* the date of the trial has usually been employed in evaluating the marital residence *(see, e.g., Sorrentino v Sorrentino,* 116 AD2d 564; *Griffin v Griffin,* 115 AD2d 587; *Barnes v Barnes,* 106 AD2d 535). As a general rule, tangible assets such as real estate or art work, as opposed to intangible property such as an interest in a business, are less susceptible to having their apparent value manipulated by any one party.

In the instant case, we find that certain items were substantially undervalued by the trial court as the result of its use of date-of-commencement values. Each of the parties' experts agreed that the principal marital residence, which is located on the waterfront in Great Neck, had experienced substantial appreciation in value between 1981 and 1984. The husband's expert testified that in 1984 the marital residence was worth $1.5 million, while the wife's expert evaluated it at $735,000 as of that time. The testimony of these experts indicates that the evaluation of a given home is dependent on numerous factors, and that no precision with respect to such evaluation is possible. We find, once again, that both experts are guilty of overstating the position of the party who retained them.

The major flaw in the opinion of the expert for the defendant wife is his failure to adequately account for the fact that the subject home is located on waterfront property, a factor which necessarily enhances its value. Upon consideration of all pertinent evidence in the record, we conclude that this property has a value of $1,000,000.

The apartment located at 150 Central Park South in Manhattan (The Hampshire House) also experienced significant appreciation in value during the pendency of this action. After considering all of the evidence in the record, we conclude that this asset should properly be evaluated at the sum of $500,000.

### III

The record establishes that the parties, during the course of their marriage, acquired a substantial amount of valuable furniture and art work, to which the trial court attributed a value of $125,000. This art work included 13 or 14 pieces of "art-type furniture" crafted and created by artist Diego Giacommetti. By notice of motion dated February 12,

1986, approximately one month after the entry of the judgment in this action, the plaintiff requested a new trial based upon the fact that Mr. Giacommetti had died on or about July 17, 1985, a date concededly after the trial of this action had concluded. Mr. Giacommetti's death is alleged to have resulted in a significant increase in the value of works crafted by him. The court denied this motion, and we now hold that the denial of the motion was entirely proper.

In his postjudgment motion, the plaintiff essentially sought to reallocate the marital assets in a manner which would purportedly be more equitable in light of an unforeseen change in the value of one class of assets which occurred *after* the trial. Were we to accept said argument, we would, in effect, be granting leave to litigants in matrimonial actions to repeatedly seek the modification of final judgments based on allegations that certain of the assets distributed may have appreciated or depreciated in value since the time of the trial. This would effectively undermine the finality of judgments in matrimonial actions due to changes in the value of property, which changes could not have been foreseen at the time of the trial.

In his concurring opinion in *O'Brien v O'Brien* (66 NY2d 576), Judge Meyer stated the following: "An equity court normally has power to ' "change its decrees where there has been a change of circumstances" ' *(People v Scanlon,* 11 NY2d 459, 462, *on second appeal* 13 NY2d 982). The implication of Domestic Relations Law § 236 (B) (9) (b), which deals with modification of an order or decree as to maintenance or child support, is, however, that a distributive award pursuant to section 236 (B) (5) (e), once made, is not subject to change" *(O'Brien v O'Brien, supra,* at 591).

Accordingly, even if we assume that certain assets, such as the Giacommetti art work, substantially increased in value since the time of the trial, this would have no effect on the validity of the equitable distribution of property ordered by the court.

## IV

Yet another issue raised on this appeal concerns the inclusion of a cooperative apartment located at 353 East 72nd Street in Manhattan among the marital assets which were subject to equitable distribution. The plaintiff purchased the subject apartment in December 1982. He borrowed $20,000

from Harmony in order to make a $17,000 down payment. The remainder of the purchase price of approximately $69,600 was financed.

■ It was error to include 100% of the value of this apartment as marital property. The record established that only $17,000 of the purchase price, or roughly 24% of its original value, was traceable to marital property (Harmony). The apartment itself is not marital property, since it was not "property acquired * * * before * * * the commencement of a matrimonial action" (Domestic Relations Law § 236 [B] [1] [c]). However, since 24% of the market value of the apartment is traceable to marital property, a similar portion of the apartment's value, i.e., $31,800, should be considered marital property (see, Brennan v Brennan, 103 AD2d 48, 54).

## V

■ Finally, we agree with the plaintiff's argument that the trial court erroneously failed to consider as marital property the defendant's interest in an art gallery known as the Arras Gallery, Ltd. It was stipulated that this gallery owned art worth $54,043 as of 1982, and, with this in mind, there is no reason to discredit the opinion of the plaintiff's expert to the effect that this business was worth $75,000 as of 1981.

## VI

■ In sum, we conclude that the judgment under review must be modified (1) to provide for the division of the proceeds of the marital residence on a 50-50 basis instead of the distribution of 20% of the proceeds to the plaintiff and 80% to the defendant, in order that all of the marital property be divided as equally as possible between the parties, and (2) to reduce the distributive award to be paid by the plaintiff husband in lieu of the defendant wife's interest in the carpet business and the inclusion of 24% of the value of the 72nd Street apartment in marital property, from the sum of $400,000 to $240,000. Under the circumstances, we deem a division of the proceeds of the marital residence on a 50-50 basis to be a more equitable distribution than that ordered by the trial court. An equal division of that asset would effectively counterbalance the fact that the intangible value of the carpet business, the assets which were primarily distributed to the plaintiff, is speculative in nature. This modification is based on

our findings as to the value of the marital assets, discussed above, which may be illustrated as follows:

| Assets | Revised Value | Plaintiff's Share | Defendant's Share |
| --- | --- | --- | --- |
| Harmony-Visa | $1,256,000 | $1,016,000 | $ 240,000 |
| Marital Residence | 1,000,000 | 500,000 | 500,000 |
| Hampshire Apt. | 500,000 | - | 500,000 |
| Siegel Apt. | 31,800 | 31,800 | - |
| Vermont Coop. | 107,500 | - | 107,500 |
| Art & Furniture | 125,000 | - | 125,000 |
| Arras Gallery | 75,000 | - | 75,000 |
| | $3,095,300 | $1,547,800 | $1,547,500 |

Those findings of the trial court not expressly overruled herein are found to have been reasonable and supported by the evidence and are, consequently, affirmed.

The defendant wife has raised no objection on appeal to the reference of this matter to a Judicial Hearing Officer for determination. In light of this fact and the plaintiff husband's assertions that the present record, after a very lengthy trial, is adequate for appellate review and that no useful purpose would be served by a remittitur to the Supreme Court for a new trial, we deem any former objections by the parties to have been waived (cf. *Schanback v Schanback*, 130 AD2d 332). The remaining arguments of the parties have also been reviewed and are found to be without merit.

Based upon the foregoing findings of fact, the judgment is modified as indicated.

RUBIN, SULLIVAN and HARWOOD, JJ., concur.

Ordered that the judgment is modified, on the law and the facts, by (1) deleting from the fifth decretal paragraph thereof the words "twenty (20%) percent" and "eighty (80%) percent", and substituting therefor the words "fifty (50%) percent" and "fifty (50%) percent", and (2) deleting from the seventh decretal paragraph thereof the words "four hundred thousand ($400,000.00) dollars" and "fifty thousand ($50,000.00) dollars", and substituting therefor the words "two hundred forty thousand ($240,000) dollars" and "thirty thousand ($30,000) dollars", respectively; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the order is affirmed, without costs or disbursements.