J.W. v D.W. (2025 NY Slip Op 50713(U))

[*1]

J.W. v D.W.

2025 NY Slip Op 50713(U)

Decided on April 30, 2025

Supreme Court, Putnam County

Grossman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 30, 2025
Supreme Court, Putnam County

J.W., Plaintiff,

against
D.W., Defendant.

Index No. 800137/2024

Victor G. Grossman, J.

The following papers numbered 1 to 13 were read on the parties' respective applications to enforce the terms of a Stipulation of Settlement incorporated but not merged in their Judgment of Divorce:
Order to Show Cause — Affirmation / Exhibits — Affidavits (2) / Exhibits 1-4
Notice of Cross Motion — Affirmations (2) / Exhibits 5-7
Affirmation  Affidavit in Further Support and Opposition 8-9
Affirmation in Further Support / Exhibits 10
Transcript of Hearing / Hearing Exhibits 11
Plaintiff's Post-Hearing Submission 12
Defendant's Post-Hearing Submission 13
Upon the foregoing papers, it is ORDERED that the motions are disposed of as follows:
Before the Court in this contested matrimonial action are the parties' post-judgment applications to enforce the terms of a July 13, 2017 Stipulation of Settlement incorporated but not merged in their August 29, 2017 Judgment of Divorce. At issue is the equitable distribution of various accounts owned by the parties, most particularly their joint Morgan Stanley invest-ment brokerage account x7639. The problem arose because despite the passage of seven years equitable distribution has never been effectuated, and the x7639 account, valued at approximately $110,000 in July of 2017, has appreciated to the point that it is now worth a sum approaching $3,000,000. How are the accounts now to be distributed between the parties?
THE JULY 13, 2017 STIPULATION OF SETTLEMENT
Plaintiff commenced this matrimonial action for a divorce on April 2, 2014. On July 13, 2017, the parties executed a Stipulation of Settlement of the matrimonial action.
Article 5 of the Stipulation, entitled "Equitable Division of Personal Property", provides in pertinent part as follows:
1. Pursuant to Domestic Relations Law Section 236B, and in consideration of the factors listed therein, the parties agree to an equal split of all marital assets . . .
. . . ..
8. The Parties acknowledge that the accounts listed below in each party's name or held jointly are marital assets with the exception of [listing certain retirement assets]. The following account balances are to be divided 50/50 between Husband and Wife, with valuation set at the date of commencement, except that that valuation of the prudential life insurance policy shall be set at July 1, 2017. Additionally, the parties agree and acknowledge that the actual statements on or about April 2014, shall control and super-cede over the values listed herein, moreover, the parties agree that any additions /[the word 'subtractions' appears in type, crossed out in ink] post April 1, 2014, shall be Husband's. Moreover, the parties agree that the April 1st 2014 marital balance shall be reduced by the amount paid from marital accounts ['post-commencement' inserted in ink] for son's college tuition, the parties shall divide marital assets after removing said amounts from the marital totals. Moreover, Husband shall receive a $17,000 credit, at the sale of the marital residence in consideration of Husband's post commencement mortgage principal paydown on the marital home.
Paragraph "8" continues with a listing of twelve (12) accounts  some in the Wife's name, some in the Husband's name, some jointly in both names. Many of those accounts are listed with modest or relatively modest balances. Indeed, the balance listed for the Morgan Stanley x7639 account was just $1,124.03. Also listed, however, were the parties' joint Morgan Stanley x7628 account ($154,685.00); the Husband's Fidelity Investments 401K ($247,568.03); and the Husband's JIB/Electrical Contractors of New York ($108,621.60). 

The Judgment of Divorce, dated August 29, 2017, provides inter alia:
ORDERED AND ADJUDGED that marital property shall be divided as described in the Stipulation of Settlement signed by the parties July 13, 2017, and it is further
ORDERD AND ADJUDGED that the Stipulation of Settlement signed by the parties July 13, 2017, a copy of which is attached and incorporated by reference into this judgment shall survive and not merge in this judgment, and the parties hereby are directed to comply with every legally enforceable term and provision of such agreement . . .
Neither the Stipulation nor the Judgment provided a time frame or deadline for carrying out equitable distribution of the parties' accounts in accordance with their agreement. While both parties were directed to comply with the terms of the Stipulation, neither was made primarily responsible for initiating the requisite measures to effectuate distribution.
THE PARTIES' JOINT MORGAN STANLEY x7639 ACCOUNT
The Morgan Stanley account statements provided to the Court for the parties' joint investment brokerage account x7639 reveal that the account had the following values on the specified dates:
April 1, 2014 (Date of Commencement / Valuation Date per Stipulation)
$39,372.77
June 30, 2017 (Last Statement Prior to Execution of Stipulation on July 13, 2017)
$110,703.52
July 31, 2024 (Last Available Statement)
$2,912,118.68
The Morgan Stanley account statements also reveal that the securities held in the x7639 investment brokerage account remained the same throughout this period. Most of the growth in the account is due to the appreciation in value of the parties' stock in Nvidia Corporation.
THE COURT'S INTERIM DECISION
By prior Decision and Order dated January 13, 2025, the Court determined that the July 13, 2017 Stipulation of Settlement was ambiguous and ordered a hearing. The Court wrote:
The Parties' Contentions
The Plaintiff Wife contends that under the terms of the Stipulation she is entitled to 50% of the current value of the x7639 account, i.e., nearly $1.5 million dollars. Plaintiff argues:
• The Stipulation provided for a 50/50 division of marital assets, including the account balances.
• While the Stipulation also provided that "additions post April 1, 2014 shall be the Husband's", there were no "additions." According to Plaintiff, "additions" means "costs incurred to acquire new assets", "new contributions or deposits made into an account", or money flowing into the account from outside the account to increase shares, but does not include "capital appreciation", i.e., "a rise in an investment's market price." It is undisputed that no new contributions or deposits have made to the x7639 account since 2014. The increase in the account's value is due solely to market appreciation of the existing shares of stock in the account.
• Had the parties divided the x7639 account immediately after the divorce, they would both have participated, independently, in the substantial market gains.
However, Plaintiff fails to account for one significant constellation of facts. As a joint owner of the x7639 account, she was presumably receiving the monthly Morgan Stanley account statements. The June 2017 statement, issued two weeks before she executed the July 13, 2017 Stipulation, reflected an account market value of $110,703.52. Neverthe- less, she agreed in the July 2017 Stipulation to a distribution of significantly less than 50% of the full value of the account: the Stipulation provides instead for a distribution of 50% of the account's value as of the April 2014 date of commencement and as reflected in the April 2014 account statement — i.e., a value of just $39,372.77 ($71,330.75 less than the full value of the account when the Stipulation was executed). As Defendant aptly notes, Plaintiff's claim in the face of that evidence that the Stipulation entitles her to a full 50% of the current market value of the x7639 account is, at the very least, incongruous.
The Defendant Husband contends that under the terms of the Stipulation the Plaintiff is entitled to 50% of the dollar value of the x7639 account as of the April 2014 valuation date — less than $20,000 — and that the balance of the account (above and beyond his own 50% share) constitutes post-April 1, 2014 "additions" which per the Stipulation belong to him. Concerning the genesis and meaning of the Stipulation's provision regarding [*2]"additions", Defendant avers:
4. The plain language of the agreement on page (9) notably sets forth, " . . . the parties agree that any additions / (the word subtractions was scratched through but is evident) post April 1, 2014, shall be Husband's."
5. As my attorney has reminded me, the removal of the word "subtractions" came after lengthy discussions regarding the Plaintiff's withdrawal of funds from marital accounts without a dollar for dollar set-off. As part of the negotiations, I received no offset for monies removed from accounts, rather the agreed upon trade-off was that any "additions" would be mine.
. . . ..
9. The Plaintiff and I initially agreed that all additions and subtractions to the Morgan Stanley accounts are attributed solely to me. However, after considering that I could not recoup on the large post commencement withdraws made by the Plaintiff [ ] from Account x027628 and post commencement payments made on behalf of Plaintiff from Account x027639, it was agreed that I would receive only the upside, growth (additions). See Exhibit 16 and Exhibit 17.
10. The amounts removed by Plaintiff and paid on Plaintiff's behalf were thousands of dollars.
. . . ..
13. The Plaintiff and I bargained, agreed, and intended for the term "additions" to include any increase in value based on market growth, as clearly depicted through the strike out of the word "subtractions" on our executed Stipulation of Settlement.
14. Any other interpretation for the term "additions" frustrates the purpose of our agreement to set the valuation date of April 2014, as no additional shares of stock have been added to the account before the execution of our Stipulation or any time after.
(Defendant Aff. in Further Support, ¶¶ 4-5, 9-10, 13-14)
Defendant's explanation raises more questions than it answers. When in matrimonial agreements attorneys wish to designate appreciation and deprecia- tion in value due to market forces, they typically use the term "gains and losses", not "additions and subtractions." Plaintiff's demonstration of the literal meaning of those terms and the distinction between them (see, p. 7 supra) is nowhere contested by Defendant. Defendant's effort in the face of Plaintiff's showing to equate "additions and subtractions" with market gains and losses is undermined, not supported, by his disquisition on the parties' negotiations. He therein links the striking out of the word "subtractions" to Plaintiff's withdrawal of substantial sums from the account, which suggests, contrary to Defendant's assertion, that the parties had intended the words "additions and subtractions" to bear their more commonplace meaning of "deposits and withdrawals." Moreover, Defendant's contention that the purpose of this modification to the Stipulation as originally drafted was to give him all post-April 2014 market gains in lieu of a credit for Plaintiff's withdrawals takes no account of the modification to Article IV, Paragraph 1 of the Stipulation. It appears that a substantial portion of Plaintiff's withdrawals were made to pay counsel fees. Article IV, Paragraph 1, which as initially drafted gave Defendant a credit for those withdrawals, was modified to provide that "counsel fees are reserved." Defendant incongruously implies that the issue of Plaintiff's withdrawals for [*3]counsel fees was resolved by according him the right to all post-April 2014 market gains.
Conclusion
The Court finds that anomalies in both parties' interpretations of the Stipulation of Settlement show that the Stipulation is not reasonably susceptible of only one meaning and give rise to a question of fact concerning the intent of the parties. Construing the Stipulation in accordance with the parties' intent is all the more difficult in the circum-stances presented here because of their delay in effectuating equitable distribution. While there were no explicit deadlines, the parties were ordered by the Court to comply with the Stipulation and to divide marital property in accordance with its terms, and they presumably intended that equitable distribution be accomplished within a reasonable time after the August 29, 2017 Judgment of Divorce was entered. There is no indication on the face of the Stipulation that the parties ever explicitly contemplated the application of their agreement seven (7) years after the fact to very substantial market gains accruing in the x7639 Morgan Stanley account.
The Court accordingly finds that the Stipulation is ambiguous and that the issues raised by the parties cannot be resolved without an evidentiary hearing.
(Decision and Order dated January 13, 2025)
THE HEARING
Pursuant to its January 13, 2025 Order the Court conducted a hearing over the course of multiple days. However, neither party in the course of that hearing addressed or overcame the anomalies in his/her interpretation of the Stipulation as set forth in the Court's Order. The Plaintiff Wife continues to insist on equitable distribution of 50% of all marital accounts including post-valuation date gains and losses despite evidence that a provision for "gains and losses" was discussed but never incorporated in the parties' Stipulation. The Defendant Husband continues to insist that all post-valuation date gains and losses belong to him based on the provision that "any additions ['subtractions' crossed out] post April 1, 2014, shall be Husband's" without even once in the course of the hearing attempting to controvert Plaintiff's demonstration that the terms "additions and subtractions" refer to "deposits and withdrawals", not passive market "gains and losses."
LEGAL ANALYSIS
A. Principles of Contract Interpretation
A matrimonial settlement agreement is a contract subject to principles of contract interpretation. See, Rainbow v. Swisher, 72 NY2d 106, 109 (1988).
In interpreting a contract, primary attention must be given to the purpose of the parties in making the contract. See, Greenfield v. Philles Records, Inc., 98 NY2d 562 (2002); In re Herzog, 301 NY 127 (1950); Madison Avenue. Leasehold, LLC v. Madison Bentley Associates, LLC, 30 AD3d 1 (1st Dept.), aff'd 8 NY3d 59 (2006). Agreements are construed in accordance with the intent of the parties and the best evidence of the parties' intent is what they express in their written contract. See, Schron v. Troutman Sanders, LLP, 20 NY3d 430 (2013); Goldman v. White Plains Center for Nursing Care, LLC, 11 NY3d 173, 176 (2008). "Where . . . the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the [*4]four corners of the instrument, and not from extrinsic evidence (Nichols v. Nichols, 306 NY 490, 496 . . . )." Rainbow v. Swisher, supra, 72 NY2d at 109. See also, Goldman v. White Plains Center for Nursing Care, LLC, supra; Greenfield v. Philles Records, Inc., supra.
B. Interpretation of the July 13, 2017 Stipulation In Light of the Equitable Distribution Law
Article V of the Stipulation, entitled "Equitable Division of Personal Property", begins:
"Pursuant to Domestic Relations Law Section 236B, and in consideration of the factors listed therein, the parties agree to an equal split of all marital assets . . . "
The parties thus unambiguously stated that their agreement concerning equitable distribution was (1) made pursuant to DRL §236B, in consideration of which (2) they were agreeing to an equal split of all marital assets. Those are the overriding principles — interpretation in light of DRL §236B, and the equal splitting of marital assets  which per the parties' own agreement must be brought to bear in determining their specific intent with respect to the division of the accounts listed in the Stipulation. 

DRL §236B[1][c] defines "marital property" in the following terms:
The term "marital property" shall mean all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held, except as otherwise provided in agreement pursuant to subdivision three of this part . . .[FN1]

"The Legislature, in defining this basic term 'marital property', we have held, intended that the term should be construed broadly in order to give effect to the 'economic partnership' concept of the marriage relationship recognized in the statute." Price v. Price, 69 NY2d 8, 15 (1986) (citing Majauskas v. Majauskas, 61 NY2d 481, 489 [1984]). Hence, notwithstanding the statute's specifying "the commencement of a matrimonial action" as the temporal terminus for spouses' accumulation of marital property, the courts have uniformly held that "marital property" includes:
(1) post-commencement passive appreciation in value of marital property due to market forces, as well as
(2) the passive accrual of interest on marital property post-commencement.
See, Lueker v. Lueker, 72 AD3d 655, 656 (2d Dept. 2010) (defendant entitled to equitable distribution of passive interest accruing post-commencement on marital portion of plaintiff's retirement plan); Gagstetter v. Gagstetter, 283 AD2d 393, 396 (2d Dept. 2001) (defendant entitled to equitable distribution of interest earned post-commencement on plaintiff's pension fund and IRA accounts); Vicinanzo v. Vicinanzo, 193 AD3d 962, 968 (3d Dept. 1993) [*5](appreciation due to market forces or the like after commencement of the action is considered marital property to be equitably distributed); Glass v. Glass, 177 AD2d 807, 808 (3d Dept. 1991) (plaintiff's share of defendant's pension/retirement funds included passive appreciation occurring post-commencement); Glasberg v. Glasberg, 162 AD2d 586, 587 (2d Dept. 1990) (wife entitled to one-half of interest earned post-commencement on husband's pension and profit-sharing plans); Brennan v. Brennan, 103 AD2d 48, 54 (2d Dept. 1984) (interest accruing on marital funds post-commencement is marital property).
The rationale underlying those decisions, as expressed by the Second Department in Brennan, supra, is that "automatic accretions to marital property stemming solely from the incidents of ownership retain the character of their source, even when realized after the action has begun." See, id.; Naimollah v. De Ugarte, 18 AD3d 268 (1st Dept. 2005) (post-commence- ment "passive decline in market value" of brokerage account may be considered in equitable distribution, as opposed to "capital losses" therein, which are considered "active rather than passive"). See also, Siegel v. Siegel, 132 AD2d 247, 255 (2d Dept. 1987) (marital property used to make downpayment on apartment acquired post-commencement; although apartment itself was not marital property, "since 24% of the market value of the apartment is traceable to marital property, a similar portion of the apartment's value . . . should be considered marital property").
In accordance with the express language of DRL §236B[1][c], spouses are of course free to opt out of generally applicable rules of equitable distribution by mutual written agreement pursuant to DRL §236B[3]. However:
[T]he intent to override the rules of equitable distribution—whether by express waiver, or by specifically designating as separate property assets that would otherwise be considered marital property under New York law—must be clearly evidenced by the writing [cit.om.].
Tietjen v. Tietjen, 48 AD3d 789, 791 (2d Dept. 2008). See also, Van Kipnis v. Van Kipnis, 11 NY3d 573, 578 (2008) (citing Tietjen, supra); Maddaloni v. Maddaloni, 142 AD3d 646, 650 (2d Dept. 2016) (quoting Tietjen, supra); Strong v. Dubin, 75 AD3d 66, 68 (1st Dept. 2010) (same, quoting Tietjen, supra).
In this case, as noted above, Article V of the parties' July 13, 2017 Stipulation, entitled "Equitable Division of Personal Property", provides in pertinent part as follows:
1. Pursuant to Domestic Relations Law Section 236B, and in consideration of the factors listed therein, the parties agree to an equal split of all marital assets . . .
. . . ..
8. The Parties acknowledge that the accounts listed below in each party's name or held jointly are marital assets with the exception of [listing certain retirement assets]. The following account balances are to be divided 50/50 between Husband and Wife, with valuation set at the date of commencement, except that that valuation of the prudential life insurance policy shall be set at July 1, 2017. Additionally, the parties agree and acknowledge that the actual statements on or about April 2014, shall control and super-cede over the values listed herein, moreover, the parties agree that any additions /[the word 'subtractions' appears in type, crossed out in ink] post April 1, 2014, shall be Husband's. Moreover, the parties agree that the April 1st 2014 marital balance shall be reduced by the amount paid from marital accounts ['post-commencement' inserted in ink] [*6]for son's college tuition, the parties shall divide marital assets after removing said amounts from the marital totals. Moreover, Husband shall receive a $17,000 credit, at the sale of the marital residence in consideration of Husband's post commencement mortgage principal paydown on the marital home.
The question arises, then, whether by virtue of (1) the provision for valuation of the specified accounts as of date of commencement, and/or (2) the provision that "any additions [subtractions crossed out] post April 1, 2014 shall be Husband's", the parties clearly evidenced an intent to opt out of the general rule that post-commencement passive appreciation in value of marital assets constitutes marital property subject to equitable distribution.
1. Date of Commencement Valuation
The weight of decisional authority in New York is to the effect that where the spouses agree to date-of-commencement valuation of marital assets without further discussion of gains and losses, a non-titled spouse may not be awarded equitable distribution of post-commencement passive appreciation in value of assets titled in the name of the other spouse.
Thus, in Adelsberg v. Amron, 103 AD3d 571 (1st Dept. 2013), the First Department wrote:
The parties' postjudgment stipulation entered into n May 13, 2010 provided that the commencement date of the divorce action would serve as the valuation date for the distribution of their retirement assets [cit.om.], which they had previously agreed to distribute equally. While the stipulation was indeed silent on the issue of whether the transfers of all retirement accounts were with losses and/or earnings, courts are required to equitably distribute not only the parties' assets but their liabilities as well [cit.om.]. Nevertheless, the stipulation was clear that the valuation date of the retirement assets would be the commencement date of the action, and therefore plaintiff is only required to share in the earnings and/or losses as of that date. She did not stipulate that valuation as of the date of the commencement of the action was to also include "post-commence-ment" value changes attributable to market forces.
Adelsberg, supra, at 572. In Gagstetter v. Gagstetter, supra, 283 AD2d 393 (2d Dept. 2001), the Second Department wrote:
The separation agreement also provides, inter alia, that the plaintiff's pension fund and individual retirement accounts would be treated as marital property and valued as of the date the divorce action was commenced. The agreement also provided that this property "shall be evaluated and distributed equally" and that the property "to be divided at such time shall include any increase in value" of such property. We disagree with the defen- dant's contention that she is entitled to any increase in value of the pension fund or individual retirement accounts from the date of commencement of this action to the date of the judgment. This was not the intent of the separation agreement (see Glasberg v. Glasberg, 162 AD2d 586 . . . ; Brennan v. Brennan, 103 AD2d 48 . . . ).
Gagstetter, supra, 283 at 396. Similarly, the Court in Altner v. Altner, 281 AD2d 379 (2d Dept. [*7]2001) wrote:
The parties' stipulation of settlement provided that the defendant was to receive 50% of the value of the plaintiff's Thrift Savings Plan as of October 1990, and did not provide that she was to receive 50% of the interest which accumulated in the plan after that date. Thus, the Supreme Court erred in modifying its order to include an award of that interest (see, McWade v. McWade, 253 AD2d 798; Twiss v. Twiss, 245 AD2d 502).
Id. To much the same effect is the Fourth Department's decision in Gurbacki v. Gurbacki, 270 AD2d 807 (4th Dept. 2000):
The parties entered into a written property settlement agreement and a custody agreement that were incorporated but not merged into the judgment of divorce. The court properly determined that, pursuant to the property settlement agreement, plaintiff is entitled to one half of defendant's Keogh plan and that defendant is entitled to one half of plaintiff's 401K, IRA and pension plans. The court erred, however, in directing that the parties are entitled to one half of the average appreciation of those plans from 1994 to the present. The property settlement agreement is an independent contract that is subject to the principles of contract interpretation [cit.om.], and it provided that the date of valuation of the retirement plans was the date of the commencement of the action.
Gurbacki, supra, 270 AD2d at 808. See also:
• Dwyer v. Dwyer, 226 NYS3d 228 (1st Dept. 2025) ("the premarital agreement's unambiguous terms, which specifically set a trigger event for determination of the parties' interest in appre- ciation in value of premarital property [i.e., an "asset valuation cutoff date"] as of the date of the parties' separation or pending divorce, must be observed")
• Reber v. Reber, 173 AD3d 1651, 1651-52 (4th Dept. 2019) (parties stipulated that plaintiff was entitled to $71,000 from defendant's 401(k) account; "[T]he stipulation of settlement clearly and unambiguously made no provision for plaintiff to receive gains or losses on the amount that the stipulation of settlement specified would be transferred to her. Thus, plaintiff is not entitled to any gains on that amount accrued after the divorce action commenced . . . ")
• McWade v. McWade, 253 AD2d 798, 799 (2d Dept. 1998) ("[T]he plaintiff's counsel stipulated in open court that the value of the defendant's pension was $446,707.69 as of the date the action was commenced. There was no discussion of, or provision for, the plaintiff to receive a share of the postcommencement gains in value in the defendant's pension")
• Twiss v. Twiss, 245 AD2d 502 (2d Dept. 1997) (where stipulation of settlement limited the plaintiff's distributive share of the defendant's deferred compensation plan to $135,000, plaintiff was "not entitled to any interest or appreciation on that sum from the date of the stipulation or judgment to the date when the money was transferred to her")
This Court is aware of only one decision to the contrary. A panel of the Fourth [*8]Department concluded in McCarthy v. McCarthy, 298 AD2d 977 (4th Dept. 2002), that an agreed-upon valuation date for marital assets "merely determines the date after which payments into the plan would be considered [the titled spouse's] separate property" and is not determinative of the treatment, for purposes of equitable distribution, of post-valuation date passive changes in value due to market forces. See, id. The McCarthy Court wrote:
Defendant appeals from those parts of an order of the Supreme Court denying those parts of his motion seeking to amend two [QDROs]: one distributing defendant's stock purchase plan (stock purchase plan QDRO) and the other distributing defendant's pension. The separation agreement, which was incorporated but not merged into the judgment of divorce, provides in relevant part that "[plaintiff] shall receive a 40% share of [defendant]'s pension and stocks, pursuant to the principles and formula enumerated in Majauskas.***[Defendant]'s savings and stock purchase plan at [defendant's place of employment] will be evenly divided by the parties, valued as of date of agreement less any loan thereon currently outstanding." The stock purchase plan QDRO, prepared by plaintiff's attorney, provides that defendant "would transfer a fifty (50) percent lump sum interest from his***stock purchase program, as an equitable distribution of this marital asset valued as of March 31, 2000." After that QDRO was filed, defendant's attorney requested that plaintiff's attorney amend the QDRO by providing that the stock purchase plan would be distributed evenly as of March 31, 2000, subject to market conditions that occur from that date to the date of distribution. Plaintiff's attorney refused and defendant's motion followed. The court determined that plaintiff was entitled to 50% of the value of the stock purchase plan as of March 31, 2000. Because the value of the stock purchase plan decreased after the date of the separation agree- ment, the court in effect made a cash distribution of that asset, resulting in a significantly greater distribution of that asset to plaintiff than to defendant. That was error. We conclude that the separation agreement did not provide the sum that each party was to receive with respect to the stock purchase plan, but rather it provided the method by which the stock purchase plan would divide that asset, i.e. "evenly," after deducting any loan balance. Although the separation agreement provides that the asset is to be "valued as of the date of agreement," that language merely determines the date after which payments into the plan would be considered defendant's separate property. Thus, we conclude that the stock purchase plan QDRO deviates from the separation agreement as incorporated into the judgment of divorce . . .
McCarthy, supra, 298 AD2d at 978 (emphasis added).
Regardless of the split in authority, the Second Department caselaw cited above is controlling in this case, and dictates a conclusion here that under the terms of the parties' July 13, 2017 Stipulation, the Plaintiff Wife is not entitled to distribution of the post-valuation date (i.e., post-commencement) passive increase in value of accounts titled in the Defendant Husband's name; nor is the Defendant Husband entitled to distribution of the post-valuation date passive increase in value of accounts titled in the Plaintiff Wife's name. Of greatest economic significance, the Wife is not entitled to post-valuation date increases in value of the Husband's Fidelity Investments 401K or his JIB/Electrical Contractors of New York account.
However, the foregoing authority has no bearing on the distribution of what is by far the largest account presently at issue — the Morgan Stanley x7639 account. All of the cited cases (i) involved the equitable distribution of marital assets titled to one spouse or the other individually, and (ii) held that the non-titled spouse was not entitled to distribution of post-valuation date appreciation unless the parties' agreement so provided. However, the Morgan Stanley x7639 account is not titled to either spouse individually; it is jointly owned by the Plaintiff Wife and Defendant Husband. Since they are both "titled spouses" on the x7639 account, they are presumptively entitled to equal shares of the post-valuation date passive increase in value of that account[FN2]
 by virtue of
(i) Article V, Section "1" of the July 2017 Stipulation ("Pursuant to [DRL] 236B, and in consideration of the factors listed therein, the parties agree to an equal split of all marital assets"), and
(ii) the caselaw, cited at page 9 supra, broadly defining marital assets as including post-commencement passive appreciation in value of marital property due to market forces, 
unless some other provision of the Stipulation "clearly evidences" an intention of the parties to the contrary. 
See, Tietjen v. Tietjen, supra.
2. "Additions"
The Court has already addressed at some length the problematic nature of the Defendant Husband's claim that the parties' Stipulation granted him all post-valuation date gains and losses by virtue of the provision that "any addition [subtractions crossed out] post April 1, 2014, shall be Husband's." (See, pp. 4-6 above) Defendant has never controverted Plaintiff's demonstration that the terms "additions and subtractions" typically refer to "deposits and withdrawals", not passive market "gains and losses", and has failed to address much less overcome the anomalies, cited by the Court in its January 13, 2025 Interim Decision, which undermine Defendant's position to the contrary.
Furthermore, the position articulated in Defendant's post-hearing submission is contradicted by the language of the parties' Stipulation in each particular. Defendant argues:
Plaintiff was to receive a specific dollar amount (50% of the date of commencement value, $129,460.77 / 2 = $64,730.38 to Plaintiff) from the parties' Morgan Stanley accounts, less any post-commencement withdrawals made unilaterally by Plaintiff, in the approximate amount of $89,000.00, less the college payments made by the parties from the accounts . . . The parties were to rely upon the April 1, 2014 statement for the dollar amount to be paid to Plaintiff . . . .Plaintiff is not entitled to any growth from the Morgan [*9]Stanley accounts, or any distribution of the Morgan Stanley accounts due to her post-commencement withdrawals of $89,000.00.
(Defendant's Post-Hearing Memorandum, p. 21)
Contrary to the Defendant Husband's assertion, the Stipulation does not provide that "Plaintiff was to receive a specific dollar amount" from the Morgan Stanley accounts, or that the parties were to rely upon the April 1, 2014 statement "for the dollar amount to be paid to Plaintiff." The Stipulation explicitly states, rather, that "the parties agree to an equal split of all marital assets", i.e., that each party was entitled to 50% of the date-of-commencement value of those accounts. Consequently, Defendant's conceit that the equitable distribution provided for in the Stipulation was a matter of a dollar amount owed by him to Plaintiff simply cannot be squared with the language of the parties' agreement.
Furthermore, and again contrary to Defendant's assertion, the Stipulation does not provide for the reduction of Plaintiff's distribution by her $89,000 in post-commencement withdrawals. As Defendant observes, Plaintiff made those withdrawals from the Morgan Stanley x7628 and x7639 accounts to pay her counsel fees. Concerning those withdrawals, the draft Stipulation originally provided:
The parties represent that Wife withdrew, charged, and or paid certain sums related to counsel fees in this instant action. Husband shall receive a credit for Wife's Counsel fees paid from marital accounts or marital charge accounts.
However, that provision was crossed out in the executed Stipulation with the notation: "Counsel fees are reserved." (Stipulation, Article 4 ¶1) Article 18 ¶4 of the Stipulation further provides:
Except as otherwise provided for in this Agreement, the parties shall each be responsible for the payment of their own legal and expert fees. Wife may choose to charge her counsel fees against her portion of equitable distribution, but is nevertheless responsible for her own counsel fees.
This provision  coupled with the crossing out of the word "subtractions" in the provision of Article 5 ¶8 that "any addition [subtractions crossed out] post April 1, 2014, shall be Husband's" — supports a conclusion that the Plaintiff Wife remains liable to the Defendant Husband for the $89,000 in unilateral withdrawals she made from the Morgan Stanley accounts. However, it contradicts the Defendant Husband's claim that Plaintiff's entitlement under the Stipulation to equitable distribution of the Morgan Stanley accounts was reduced or eliminated by virtue of those withdrawals.
Finally, the Defendant Husband's assertion that "Plaintiff is not entitled to any growth from the Morgan Stanley accounts" is wholly conclusory and finds no support in the language of the parties' Stipulation. 
In view of the foregoing, the Court finds per Tietjen v. Tietjen, supra, that the Stipulation does not "clearly evidence" an intention of the parties to override the application of the general rule that passive market gains and losses in jointly owned accounts (including the parties' jointly owned Morgan Stanley accounts) constitute marital property subject to equitable distribution.
[*10]3. Conclusion
The Court is acutely aware that the result of its holding is that the parties' jointly owned marital accounts are treated differently from their individually owned marital accounts even though nothing on the face of the Stipulation indicates that the parties specifically contemplated that result. Nevertheless, that differentiation in treatment is the legal consequence of the language which the parties employed in their Stipulation. The parties and their learned counsel are presumed to have known the law and to have intended that the Stipulation be construed in light of existing law. Moreover, as the Court observed at the outset, "the best evidence of the parties' intent is what they express in their written contract." See, Schron v. Troutman Sanders, LLP, supra; Goldman v. White Plains Center for Nursing Care, LLC, supra. Nothing emerged at the evidentiary hearing that would dictate a result to the contrary. Indeed, what the evidence showed, among other things, was that the final version of the Stipulation, with numerous handwritten additions and changes, was composed in great haste under pressure, applied by the presiding judge in the parties' matrimonial action, to settle the matter or proceed immediately to trial. Particularly in those circumstances, it is inadvisable to attach greater weight to what went unsaid than to the legal effect of the actual language of the agreement.
It is therefore
ORDERED, that the parties' motions are granted in part and denied in part, as follows, and it is further
ORDERED, that as and for equitable distribution pursuant to the Stipulation of Settlement dated July 13, 2017 (the "Stipulation") and Judgment of Divorce dated August 29, 2017 (the "JOD"), Plaintiff and Defendant are each entitled to receive 50% of the current value (i.e., the value as of date of distribution) of the jointly owned accounts and assets listed on pages 9-10 of the aforesaid Stipulation, and it is further
ORDERED, that as and for equitable distribution pursuant to the aforesaid Stipulation and JOD, Plaintiff is entitled to receive 50% of the value as of April 2, 2014 (as reflected in the April 2014 account statements) of the Defendant's accounts and assets listed on pages 9-10 of the aforesaid Stipulation, and it is further
ORDERED, that as and for equitable distribution pursuant to the aforesaid Stipulation and JOD, Defendant is entitled to receive 50% of the value as of April 2, 2014 (as reflected in the April 2014 account statements) of the Plaintiff's accounts and assets listed on pages 9-10 of the aforesaid Stipulation, and it is further
ORDERED, that Plaintiff and Defendant are directed to actively cooperate with each other and to take all measures required to effectuate equitable distribution in accordance with the terms of this Order no later than July 30, 2025, provided, however, that Defendant's obligation in this regard is conditioned on Plaintiff's having made provision — whether by direct payment, by agreement to a credit against her distribution, or otherwise — for payment to Defendant of the sum of $89,000.00, and it is further
ORDERED, that the requests for counsel fees are denied in their entirety.
The foregoing constitutes the decision and order of the Court.
Dated: April 30, 2025
Carmel, New York 
E N T E R
HON. VICTOR G. GROSSMAN, J.S.C.

Footnotes

Footnote 1: DRL §236B[3] provides in pertinent part that "[a]n agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded . . . "

Footnote 2: At the hearing, the Defendant Husband maintained that the growth in the Morgan Stanley x7639 account did not constitute mere passive appreciation because he was, purportedly, actively managing the account. However, as that claim is flatly contradicted by the evidence, which shows inter alia that there were no stock purchases or sales in the account for over twenty years, since the original purchase on the Nvidia stock, the claim was tacitly abandoned in Defendant's post-hearing submission.