■ In the Matter of COUNTY OF WESTCHESTER, Respondent-Appellant, v THOMAS O'NEILL, as President of the Westchester County Correction Officers Benevolent Association, Inc., et al., Appellants-Respondents. [594 NYS2d 814] —In a proceeding pursuant to Judiciary Law § 750, (1) Thomas O'Neill, President of the Westchester County Correction Officers Benevolent Association, Inc., and its officers and members, appeal from so much of a judgment of the Supreme Court, Westchester County (Burrows, J.), entered November 10, 1992, as, after a hearing, (a) adjudged the Westchester County Correction Officers Benevolent Association, Inc., to be in criminal contempt, and (b) imposed a fine of $1,000 per day, to be doubled every five days, for the duration of an allegedly illegal slowdown, and (2) the petitioner County of Westchester cross-appeals from so much of the judgment as "found that there has been no proof of affirmative action by the union or its officials in causing, instigating, or encouraging the slowdown; and * * * to the extent that the court rejected the County's claim * * * of legislative immunity and testimonial privilege".

Ordered that the cross-appeal of the petitioner County of Westchester is dismissed; and it is further,

Ordered that the judgment is reversed insofar as appealed from, on the law and on the facts, and the proceeding is dismissed; and it is further,

Ordered that the appellants-respondents are awarded one bill of costs.

Although the argument that the Supreme Court erred in finding that the appellants-respondents did not affirmatively cause, instigate, or encourage the alleged slowdown is reviewable as an alternative basis for the affirmance of the judgment appealed from even in the absence of a cross appeal (CPLR 5501 [a] [1]), findings of fact are not independently appealable *(see, Matter of Smart v Lefkowitz,* 49 AD2d 882). The County also argues that the Supreme Court erred in ruling that certain County legislators could be called to testify at the

hearing held on the contempt motion. However, the County does not request vacatur or modification of any provision of the judgment appealed from and has not alleged that such vacatur or modification, or any other corrective measure, would be warranted in the event that this Court were to agree with its argument. Accordingly, the petitioner's cross appeal is dismissed.

We agree with the Supreme Court that "there has been no proof of affirmative action by the union or its officials in causing, instigating or encouraging the slowdown". In a memorandum dated October 2, 1992, the appellant Thomas F. O'Neill objected to the fact that supervisors were performing functions normally reserved to members of the union. In this memorandum, Mr. O'Neill also asserted that the supervisors' conduct constituted a violation of "standard operating procedures * * * promulgated to protect the lives and safety of correction officers". Mr. O'Neill also warned the supervisors in question that they would face potential legal liability in the event the violation of such "standard operating procedures" led to personal injury.

Considering the standard of proof applicable to proceedings of this nature (see, e.g., County of Rockland v Civil Serv. Empls. Assn., 62 NY2d 11, 14-16; Yorktown Cent. School Dist. v Yorktown Congress of Teachers, 42 AD2d 422, 426), we cannot conclude that Mr. O'Neill's issuance of the October 2, 1992, memorandum constituted a willful violation of a temporary restraining order in an order to show cause dated September 18, 1992, which enjoined the union from "engaging in a concerted stoppage of work, in a strike or slowdown, or refusal to perform duties". To discourage union members from performing their jobs is one thing. What Mr. O'Neill attempted to do was to discourage supervisory personnel from performing jobs ordinarily done by union members. This did not violate the temporary restraining order.

We cannot agree with the Supreme Court that the union can nonetheless be held in contempt on the theory that the supposed failure of union officers to take affirmative steps to end the slowdown can be considered a violation of that part of a preliminary injunction in an order dated October 8, 1992, which enjoined the "condoning" of the slowdown. The preliminary injunction prohibited the union from "acting or threatening to act in violation of Civil Service Law § 210, by causing, instigating, encouraging or condoning a * * * slowdown". The preliminary injunction commanded the union to refrain from certain conduct, but nowhere did it command the union, or

any member thereof, to perform any specific act. In order to adjudge a party in criminal contempt, the mandate of the court allegedly violated must be clearly expressed *(see, Matter of Spector v Allen,* 281 NY 251; *Ellenberg v Brach,* 88 AD2d 899).* In light of this standard, in light of the essentially uncontradicted proof that all officers of the union's executive board told their membership to end the slowdown, and in light of all of the other circumstances, we conclude that the determination adjudging the union to be in criminal contempt was against the weight of the evidence. Bracken, J. P., Lawrence, Eiber and Pizzuto, JJ., concur.