■ EDWARD A. GRIGGS, JR., Appellant-Respondent, v PAULETTE C. GRIGGS, Respondent-Appellant. [844 NYS2d 351]—

In an action for a divorce and ancillary relief, the plaintiff appeals (1), as limited by his brief, from stated portions of a judgment of divorce of the Supreme Court, Westchester County (Giacomo, J.), dated December 12, 2005, which, inter alia, awarded the defendant 35%, rather than 25%, of the value of his medical practice, awarded the defendant maintenance for a period of eight years in the amount of $8,000 a month for the first three years and $6,000 a month for the five years thereafter, directed that he pay 100% of all unreimbursed and uncovered medical expenses of the two children until such time as they reach the age of 21, and awarded the defendant the total sum of

$159,230.50 in attorney's and experts' fees, (2) from findings of fact and conclusions of law of the same court also dated December 12, 2005, and (3) from a money judgment of the same court dated March 16, 2005, which is in favor of the defendant and against him in the sum of $16,450, representing pendente lite relief awarded the defendant in an order of the same court dated November 22, 2004 (Garvey, J.), but never paid; and the defendant cross-appeals, as limited by her brief, from so much of the judgment of divorce as awarded her durational, rather than permanent, maintenance, and 35%, rather than 50%, of the value of the plaintiff's medical practice.

Ordered that the appeal from the findings of fact and conclusions of law is dismissed, as findings of fact and conclusions of law are not separately appealable (*see Matter of County of Westchester v O'Neill*, 191 AD2d 556 [1993]); and it is further,

Ordered that the money judgment is affirmed; and it is further,

Ordered that the judgment of divorce is modified, on the law and the facts and in the exercise of discretion, (1) by deleting the provision thereof awarding the defendant maintenance for a period of eight years in the amount of $8,000 a month for the first three years and $6,000 a month for the five years thereafter and substituting therefor a provision awarding maintenance for a period of five years in the amount of $8,000 a month for the first three years and $6,000 a month for the two years thereafter, (2) by deleting the provision thereof directing the plaintiff to pay 100% of all unreimbursed and uncovered medical, dental, psychiatric, and orthodontic expenses of the two children and substituting therefor a provision directing the plaintiff to pay 78.6% of all reasonable unreimbursed and uncovered medical, dental, psychiatric, and orthodontic expenses of the two children, and (3) by deleting the provision thereof awarding the defendant attorney's fees and experts' fees in the total sum of $159,230.50; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from; and it is further,

Ordered that one bill of costs is awarded to the plaintiff.

"[T]he amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts" (*Wortman v Wortman*, 11 AD3d 604, 606 [2004]; *see McCully v McCully*, 306 AD2d 329 [2003]; *Sidhu v Sidhu*, 304 AD2d 816, 817 [2003]; *Mazzone v Mazzone*, 290 AD2d 495 [2002]). The factors to be considered in awarding maintenance include "the standard of living of the parties during the marriage, the income and property of the parties, the distribution of marital property, the

duration of the marriage, the health of the parties, the present and future earning capacity of both parties, the ability of the party seeking maintenance to become self-supporting, and the reduced or lost lifetime earning capacity of the party seeking maintenance" (*Unterreiner v Unterreiner*, 288 AD2d 463 [2001]; *see Hathaway v Hathaway*, 16 AD3d 458, 460 [2005]; *Wortman v Wortman*, 11 AD3d 604 [2004]).

"Although the court is required to consider the parties' preseparation standard of living in determining the appropriate amount and duration of maintenance, a preseparation 'high-life' standard of living does not guarantee a per se entitlement to an award of lifetime maintenance" (*Chalif v Chalif*, 298 AD2d 348, 348 [2002]; *see Hartog v Hartog*, 85 NY2d 36, 50-51 [1995]). Rather, the court must consider the payor spouse's reasonable needs and the reasonable needs of the recipient spouse and the preseparation standard of living in the context of the other factors enumerated in Domestic Relations Law § 236 (B) (6) (a), "and then, in [its] discretion, fashion a fair and equitable maintenance award accordingly" (*Hartog v Hartog*, 85 NY2d at 52; *see* Domestic Relations Law § 236 [B] [6] [a]; *Chalif v Chalif*, 298 AD2d at 348).

In light of the parties' long marriage and the defendant's partial subordination of her career to the care of the children and looking after the marital home, the court properly awarded the defendant maintenance. However, awarding maintenance for a period of eight years was an improvident exercise of discretion.

"Maintenance is designed to give the spouse economic independence and should continue only as long as is required to render the recipient self-supporting" (*Granade-Bastuck v Bastuck*, 249 AD2d 444, 446 [1998]; *see Bains v Bains*, 308 AD2d 557, 559 [2003]; *De La Torre v De La Torre*, 183 AD2d 744, 745 [1992]). "In addition, while insuring that the [recipient spouse's] reasonable needs are provided for, it should also provide her with an appropriate incentive to become financially independent" (*Granade-Bastuck v Bastuck*, 249 AD2d at 446; *see Palestra v Palestra*, 300 AD2d 288, 289 [2002]).

Notwithstanding her testimony to the contrary, based on the record, there is no reason it should take the defendant, a graduate of the Wharton School of Business, with extensive experience in banking and finance, more than five years to find employment and return to a salary of at least $70,000 a year. Under the circumstances, a reduction in the duration of maintenance from eight years to five years will provide the defendant with a greater incentive to utilize her contacts and prepare for

and take whatever tests are necessary to increase her employability, while at the same time still provide her with sufficient time to become financially independent (*see Palestra v Palestra*, 300 AD2d at 289; *Granade-Bastuck v Bastuck*, 249 AD2d at 446).

The court providently exercised its discretion in awarding the defendant 35% of the plaintiff's medical practice (hereinafter the Practice). "Although in a marriage of long duration, where both parties have made significant contributions to the marriage, a division of marital assets should be made as equal as possible . . . , there is no requirement that the distribution of each item of marital property be made on an equal basis" (*Chalif v Chalif*, 298 AD2d at 349; *see Arvantides v Arvantides*, 64 NY2d 1033, 1034 [1985]). Here, the award of 35% takes into account the limits of the defendant's involvement with the Practice, while not ignoring the direct and indirect contributions that she did make (*see Wagner v Dunetz*, 299 AD2d 347, 349 [2002]; *Chalif v Chalif*, 298 AD2d at 349; *Granade-Bastuck v Bastuck*, 249 AD2d at 445).

The plaintiff's contention that the court "double-counted" his Practice is without merit. The Court of Appeals recently held that the prohibition against double counting does not apply where, as here, the asset to be distributed is a "tangible income-producing asset," rather than an intangible asset, such as a professional license, the value of which can only be determined based on projected earnings (*see Keane v Keane*, 8 NY3d 115, 119 [2006]).

The court providently exercised its discretion in granting the defendant exclusive use and occupancy of the marital residence until the son reaches the age of 18 or finishes high school, whichever occurs later (*cf. Parris v Parris*, 136 AD2d 685 [1988]; *Blackman v Blackman*, 131 AD2d 801 [1987]).

Contrary to the plaintiff's assertions, the court sufficiently articulated its reasons for applying the statutory percentage to the first $160,000 of the parties' net combined income over $80,000, and its determination to do so "reflected a careful consideration of the parties' circumstances and the [children's] needs" (*Matter of Kinch v Neckles*, 282 AD2d 603, 603 [2001]; *see Matter of Grosso v Grosso*, 24 AD3d 552, 552 [2005]). Moreover, "there is 'sufficient record indication' that application of the statutory percentage was justified" (*Kaplan v Kaplan*, 21 AD3d 993, 995 [2005], quoting *Matter of Cassano v Cassano*, 85 NY2d 649, 655 [1995]).

We agree with the plaintiff that the court erred in directing that he pay 100% of the health care expenses of the children not

covered by insurance. The plaintiff correctly notes that the court mistakenly omitted the word "reasonable" to describe the unreimbursed health care expenses to be paid (*see* Domestic Relations Law § 240 [1-b] [c] [5]; *Grossman v Grossman*, 224 AD2d 489, 491 [1996]). Moreover, pursuant to the statute, the court was required to prorate these expenses between the parties "in the same proportion as each parent's income is to the combined parental income" (Domestic Relations Law § 240 [1-b] [c] [5]; *see Sicurelli v Sicurelli*, 285 AD2d 541, 542 [2001]; *Donohue v Donohue*, 239 AD2d 543 [1997]; *LaBombardi v LaBombardi*, 220 AD2d 642, 644 [1995]; *Ames v Ames*, 212 AD2d 653, 654 [1995]). Accordingly, the court should have directed that the plaintiff pay 78.6%, and that the defendant pay 21.4%, of the children's unreimbursed reasonable health care expenses.

The award of attorney's and experts' fees to the defendant was an improvident exercise of discretion. While "the matter of counsel fees is entrusted to the sound discretion of the trial court, it is nonetheless to be controlled by the equities of the case and the financial circumstances of the parties" (*Kavanakudiyil v Kavanakudiyil*, 203 AD2d 250, 252 [1994] [internal quotation marks and citation omitted]; *see DeCabrera v Cabrera-Rosete*, 70 NY2d 879, 881 [1987]; *Levy v Levy*, 4 AD3d 398, 398 [2004]; *Celauro v Celauro*, 295 AD2d 388, 389 [2002]; *Kret v Kret*, 222 AD2d 412, 413 [1995]). The circumstances here, in which there is no evidence of delaying tactics on the part of the plaintiff (*cf. Levy v Levy*, 4 AD3d at 398; *Klein v Klein*, 296 AD2d 533, 535 [2002]), do not warrant an award of attorney's or experts' fees to the defendant (*see Penna v Penna*, 29 AD3d 970, 972 [2006]; *Eisenstadt v Eisenstadt*, 305 AD2d 535, 535 [2003]; *Celauro v Celauro*, 295 AD2d at 389). While "[i]ndigency is not a prerequisite to an award of counsel fees" (*DeCabrera v Cabrera-Rosete*, 70 NY2d at 881), the defendant will be receiving a substantial equitable distribution award from the plaintiff, in addition to five years of maintenance. Furthermore, in misrepresenting her income for the purpose of increasing the plaintiff's obligation to support her, the defendant forfeited any entitlement she might otherwise have had to this form of equitable relief (*see Tepfer v Berger*, 119 AD2d 668, 669 [1986]; *Haskins v Thomajan*, 99 AD2d 463, 463-464 [1984]; *Farino v Farino*, 88 AD2d 902 [1982]; *Levy v Braverman*, 24 AD2d 430 [1965]).

The plaintiff's remaining contention is without merit. Ritter, J.P., Santucci, Lifson and Dillon, JJ., concur.