D.A. v B.B. (2026 NY Slip Op 50279(U))

[*1]

D.A. v B.B.

2026 NY Slip Op 50279(U)

Decided on March 3, 2026

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 3, 2026
Supreme Court, Westchester County

D.A., Plaintiff,

againstB.B., Defendant.

Index No. XXXXX

Plaintiff: Dana Samantha Foster-Navins, Dana Foster Navins, Esq., P.C., 220 White Plains Road, 5th Floor, Tarrytown, New York 10591Defendant: Self-Represented

James L. Hyer, J.

Relevant Factual and Procedural HistoryThis action was commenced on December 5, 2025, with the Plaintiff's filing of a summons and complaint (hereinafter collectively "Complaint").[FN1]

The Complaint requests judgment against the Defendant dissolving the marriage between the parties to this action pursuant to New York State Domestic Relations Law (hereinafter "DRL") § 170(7), asserting that the parties' relationship had irretrievably broken down for a period in excess of six months, along with ancillary relief including: (1) declaring Plaintiff's separate property and awarding Plaintiff her separate property; (2) providing for equitable distribution of marital property and debt or a distributive award of whole or in part hereof; (3) granting Plaintiff an award of adequate and reasonable counsel, accountant, appraisal, and expert fees, payable by Defendant, as may be determined by the Court considering the facts and circumstances of the matter; and, (4) granting such other and further relief as the Court deems just and proper.
On December 30, 2025, Plaintiff filed an affirmation of service [FN2]
asserting that on December 27, 2025, Plaintiff had served upon Defendant, by personal service, the following documents: (1) Complaint, (2) notice of automatic orders, (3) notice of guideline maintenance, and (4) notice of continuation of health care coverage.
On January 7, 2026, Plaintiff filed a request for judicial intervention [FN3]
seeking the scheduling of a preliminary conference.
On January 8, 2026, a court notice [FN4]
was issued advising that the undersigned was assigned to preside over this action and scheduling a preliminary conference to be held on January 26, 2026, at 10:00 a.m.
On January 16, 2026, Plaintiff filed an affirmation of service [FN5]
of the court notice on Defendant, which was thereafter adjourned to be held on February 4, 2026, at 9:00 a.m.[FN6]

On February 4, 2026, a conference was held before the undersigned wherein appearances were made by Plaintiff, Plaintiff's counsel and Defendant as a self-represented litigant, a so-ordered transcript for which has been filed (hereinafter "2/4/26 Transcript").[FN7]
After being sworn in as a self-represented litigant, Defendant informed the Court that he earns $1,650.00 per month from disability,[FN8]
 and was then advised that as a self-represented litigant he would be held to the same rules and responsibilities as an attorney would appearing before this Court:
"THE COURT: Okay. Now, sir, I am going to give you two documents. The first one is a Self-Represented Litigant Information Sheet. That's going to be marked as Court Exhibit Number 1. And the second is a copy of my Part Rules. A copy is going to be marked, they are going to be filed on NYSCEF, and I am going to make sure that plaintiff's counsel gets a copy as well. Now, the folks that appear before me have the ability to be represented by counsel. They can also represent themselves. There is no requirement that you hire a lawyer. However, I always give these documents out because the lawyers sometimes have difficulty following the rules here and understanding the process, so I want to make sure that the self-represented litigants have a baseline of information. So the Self-Represented Litigant Information Sheet has information including for the law library located on the ninth floor that's open to the public. There's print materials, computer banks, and other resources that you might find helpful. Also in the law library there is the Office of Self-Represented. That's staffed by court personnel. They can't [*2]provide you with legal counsel, but they can provide you with further information that you might find useful.With respect to my Part Rules, every Trial Court Judge in the State of New York from the village courts up have the ability to promulgate their own part rules providing instructions to litigants and attorneys as to actions and proceedings that are commenced before that particular justice. These are mine. They work in concert with the Westchester Matrimonial Operational Rules and the Trial Court Rules for the State of New York. While I am not providing you with hard copies of those documents, there are hyperlinks to them, so you can get them electronically or you can go down to the ninth floor and you can get hard copies. I am mentioning all of this to you because whether you are a lawyer or a litigant representing yourself, you are bound to these responsibilities, and I don't want to hear later on in the proceeding, I didn't understand, I didn't know, it's not fair. I am the same in every case. Sir, do you understand all of that?B.B.: Yes, sir.THE COURT: Very good. If you can mark those, Madam Court Reporter. We are going to file them on NYSCEF so that it's clear that this was done.(Whereupon, Court's Exhibits 1 and 2 were marked as of this date.)THE CLERK: They were marked."[FN9]
During this conference, the Court confirmed that neither party had timely filed their respective statements of net worth with required financial disclosure,[FN10]
the parties were then [*3]directed to promptly file a statement of net worth, being provided a copy of the form statement of net worth which was marked as a court exhibit and advised that a discovery schedule would be set at the adjourned preliminary conference:
"THE COURT: Great. I want you both to come here with your statement of net worth completed. Ms. Kirklin, we are going to mark that as Court Exhibit Number 3, and I am going to provide a copy to plaintiff and to defendant. That's going to list all of your biographic information, your income, your expenses, your debts, and your assets. This has to be completed truthfully without any material omission. At that point in time, I am going to, with you or with your lawyer, sir, if you have one, schedule you for discovery.MS. FORSTER-NAVINS: Thank you.THE COURT: We will proceed in that way. Let the record reflect I can verbally see everybody receiving a copy of what will be marked Court Exhibit Number 3. Sir, you are going to go down to the Office of Self-Represented and the Court Clerk's Office, which is also on that floor, and you are going to register for NYSCEF today so that you can get all of the court documents via NYSCEF e-mail. Plaintiff's counsel, to the extent that defendant does not have a lawyer, you are also to e-mail him all of the documents that are filed on NYSCEF —MS. FORSTER-NAVINS: Of course.THE COURT: — either by the Court or by you so that there is a clear record that he has received everything.MS. FORSTER-NAVINS: Understood.THE COURT: Okay.(Whereupon, Court's Exhibit 3 was marked as of this date.)THE COURT: Very good. That's been marked. It's going to be uploaded. I am uploading an order later today indicating that February 13, 2026 at 10:00 a.m. will be the preliminary conference. I expect that a proposed order will be filed, it wasn't filed today, in addition to the statements of net worth. The statements of net worth also need to include your paystubs, copy of your last tax return, and to the extent that you have a lawyer, your engagement agreement. I look forward to seeing everybody next week. Please step out.MS. FORSTER-NAVINS: Thank you, Judge.B.B.: Thank you, sir."[FN11]
Following the conference an order [FN12]
was entered directing the following:
"A preliminary conference shall be held on February 13, 2026, at 10:00 a.m. wherein all parties and counsel shall appear, having previously filed completed statements of net worth with required attachments, along with a proposed preliminary conference order."On February 12, 2026, Plaintiff's counsel filed Plaintiff's statement of net worth and a proposed preliminary conference order.[FN13]
Despite the directives provided to Defendant at the February 4, 2026 conference, and in the order filed immediately thereafter, Defendant neither registered as a NYSCEF registered user for this action or filed any financial disclosure including a statement of net worth.
On February 13, 2026, a conference was held before the undersigned wherein appearances were made by Plaintiff and Plaintiff's counsel, with no appearance by Defendant and Defendant having failed to request an adjournment of the conference. A transcript from this conference was so-ordered and filed (hereinafter "2/13/26 Transcript"),[FN14]
which reflects that upon inquiry by this Court Plaintiff's counsel confirmed that Defendant was aware of the conference and advised that he would not be appearing:
"THE COURT: Thanks. Everybody please be seated. Ms. Forster-Navins, this is scheduled for a preliminary conference pursuant to an order entered by me on February the 4th, 2026 filed as NYSCEF document number 13, did you provide notice to the defendant that he was required to appear here?MS. FORSTER-NAVINS: We were here last week, your Honor, and you put this down for today. He was here. He knew to come here. He indicated to my associate that he was not coming today, but he had also said that last time and then showed up, so.THE COURT: Well, to be clear, this was scheduled for 10:00 and it's now approximately 10:42 a.m. The Court has not received any requests for an adjournment from the defendant or through any attorney representing the defendant. But in an abundance of caution, the Court waited 45 minutes to call this case to afford him additional time to appear if he wished to do so. Accordingly, the Court holds the defendant now in default."[FN15]
After this conference an order (hereinafter "Inquest Scheduling Order")[FN16]
was entered providing the following:
"Pursuant to the Part Rules of the Hon. James L. Hyer, J.S.C. § (E)(a):
'Counsel, including per diem covering counsel, and self-represented litigants, must appear on time, be fully familiar with the action(s) on which they appear, be authorized and prepared to discuss all factual and legal issues presented by the litigation and settlement demands or offers, and be authorized to enter into any agreement on behalf of their client. Failure to comply with this Rule may be treated as a default for purposes of 22 NYCRR § 202.27 and/or may be treated as a failure to appear for purposes of 22 NYCRR § 130.2.1. In matrimonial actions, attorneys must appear with their clients for all conferences, unless such appearances are dispensed with by the Court on prior written request, on notice to the adversary, and if applicable, the children(s)'s attorney(s). If counsel or a party is unable to appear on time due to unforeseen circumstances (i.e., delays due to inclement weather or road closures), counsel should contact opposing counsel(s), and advise the Part Clerk or Court's staff, by telephone, as soon as possible. Tardy arrivals will not be tolerated.'Pursuant to the Part Rules of the Hon. James L. Hyer, J.S.C. § (E)(b):'A request to adjourn a conference must be made in writing, by NYSCEF ONLY, except as provided in Section C(a), at least two (2) full business days in advance of the scheduled conference, unless there is an emergency.'Pursuant to Uniform Rules of the New York State Trial Courts § 202.27:'At any scheduled call of a calendar or at any conference, if all parties do not appear and proceed or announce their readiness to proceed immediately or subject to the engagement of counsel, the judge may note the default on the record and enter an order as follows:(a) If the plaintiff appears but the defendant does not, the judge may grant judgment by default or order an inquest.(b) If the defendant appears but the plaintiff does not, the judge may dismiss the action and may order a severance of counterclaims or cross-claims.(c) If no party appears, the judge may make such order as appears just.' ACCORDINGLY, IT IS HEREBY:ORDERED that the Defendant is in default; and it is herebyORDERED that an Inquest shall be held on February 26, 2026, at 10:00 a.m.-5:00 p.m., wherein all parties and counsel must appear in-person to address all of the issues pending before this Court pertaining to this action, including but not limited to: (1) grounds for dissolution of the parties' marriage; (2) equitable distribution of marital property; (3) declaration of separate property; (4) claims of dissipation; (5) spousal support and maintenance; (6) child custody, access and support; (7) resumption of pre-marriage surnames; (8) attorneys' fees and litigation expense requests; and (9) any other issues arising out of the requested dissolution of the parties' marriage; and it is furtherORDERED that by February 23, 2026, both parties shall file with the Court and serve upon each other via overnight delivery the following: (1) Witness List for all witnesses to [*4]provide testimony at the Inquest with the understanding that if witnesses are not disclosed they will precluded from testifying at the Inquest; and (2) Exhibit List with copies of all exhibits to be utilized at the Inquest with the understanding that if disclosure is not made pursuant to this directive exhibits will be precluded at Inquest; and it is further ORDERED that by February 13, 2026, Plaintiff shall serve Defendant with a copy of this Order with Notice of Entry on Defendant via by e-mail and traceable overnight delivery, and file proof of service with the Court, including copy of the overnight tracking slip; and it is furtherORDERED that Plaintiff shall order a copy of the Court Transcript, pay the entire cost of same and submit to the Court to be so ordered by March 13, 2026. The foregoing constitutes the Decision and Order of the Court."On February 13, 2026, Plaintiff's counsel filed a notice of entry of the Inquest Scheduling Order;[FN17]
along with proof of service that on that date Defendant was served with the Inquest Scheduling Order and notice of entry.[FN18]

On February 20, 2026, Plaintiff's counsel filed Plaintiff's amended statement of net worth (hereinafter "Plaintiff's Statement of Net Worth");[FN19]
which reflects that there are no children of the parties' marriage; lists Plaintiff's employment as [Redacted] and Defendant's employment as Social Security Disability; Plaintiff's total monthly expenses as $9,214.59; and, Plaintiff's annual income as $114,550.00. Annexed to Plaintiff's Statement of Net Worth is Plaintiff's 1040 U.S. Individual Income Tax Return listing as Plaintiff's dependents each with the description "grandchild": (1) A.S. (hereinafter "A.S."); and (2) D.A. (hereinafter "D.A.") (hereinafter collectively "Grandchildren").
Plaintiff's Statement of Net Worth lists assets as follows: (1) checking account ending "[Redacted]" titled solely in her name at USALLIANCE Federal Credit Union, with a date of commencement balance of $2,081.00, with a date opened listed as 2010 (hereinafter "Account #1"); (2) savings account ending "[Redacted]" titled solely in Plaintiff's name at USALLIANCE Federal Credit Union, with a date of commencement balance of $560.67, with a date opened listed as 2010 (hereinafter "Account #2"); (3) savings account ending "[Redacted]" titled solely in Plaintiff's name at USALLIANCE Federal Credit Union, with a date of commencement balance of $3,000.00, with a date opened listed as 2025 (hereinafter "Account #3"); (4) savings account ending "[Redacted]" with a date of commencement balance of $4,300.00 (hereinafter "Account #4"); (5) real estate consisting of a single family home located at [Redacted], titled solely in Plaintiff's name, with an estimated fair market value of $471,700.00, with a date of acquisition listed as February 5, 2021 (hereinafter "New Rochelle Property"); (6) Fidelity 401(k) account ending "[Redacted]" titled solely in Plaintiff's name, with a date of commencement balance of $34,838.00, with a date of acquisition listed as June of 2010 (hereinafter "Plaintiff's [*5]401(k)"); and, (7) 2021 Chevy Trax vehicle, titled solely in Plaintiff's name, with a date of commencement fair market value listed as $10,000.00 (hereinafter "Chevy Trax").
Plaintiff's Statement of Net Worth lists the following liabilities: (1) American Express Credit Card, account number ending "[Redacted]", listing no debtor and a date of commencement balance listed as $1,120.27 (hereinafter "Debt #1"); (2) Capital One Bank Credit Card, providing no credit card account number, listing Plaintiff as the sole debtor, with a date of commencement balance listed as $5,000.00 (hereinafter "Debt #2"); (3) Credit One Credit Card, providing no credit card account number, listing Plaintiff as the sole debtor, with a date of commencement balance listed as $1,412.86 (hereinafter "Debt #3"); (4) Kohl's Capital One Credit Card, account number ending "[Redacted]", listing Plaintiff as sole debtor, with a date of commencement balance listed as $2,876.02 (hereinafter "Debt #4"); (5) Macy's Credit Card, account number ending "[Redacted]", listing the sole debtor as Plaintiff, with a date of commencement balance of $503.58 (hereinafter "Debt #5"); (6) Home Depot Credit Card, account number ending "[Redacted]", listing Plaintiff as sole debtor, with a date of commencement balance listed as $2,078.99 (hereinafter "Debt #6"); (7) Credit One Bank Visa Credit Card, providing no credit card account number, listing Plaintiff as the sole debtor, with a date of commencement balance listed as $1,162.03 (hereinafter "Debt #7"); (8) Carrington Mortgage encumbering the New Rochelle Property, providing no loan number, listing Plaintiff as the sole debtor, with a date of commencement balance listed as $432,000.00 (hereinafter "Debt #8 - Mortgage"); (9) GoodLeap Homeowners Loan, providing no loan number, listing Plaintiff as the sole debtor, with a date of commencement balance listed as $6,700.00 (hereinafter "Debt #9"); and, (10) Dividend Homeowner Loan, providing no loan number, listing Plaintiff as the sole debtor, with a date of commencement balance listed as $14,243.80 (hereinafter "Debt #10").
Plaintiff's Statement of Net Worth further notes that she provided payment of $5,700.00 to Dana Foster-Navins, Esq., P.C. Annexed to Plaintiff's Statement of Net Worth is Plaintiff's engagement agreement with Dana Foster-Navins, Esq., P.C.
On February 23, 2026, Plaintiff's counsel filed pre-inquest disclosure including: (1) witness list [FN20]
providing Plaintiff as the only witness to testify at inquest; (2) exhibit list [FN21]
enumerating sixteen potential exhibits to be utilized at inquest; and (3) proposed exhibits [FN22]
(hereinafter collectively "Plaintiff's Pre-Inquest Disclosure").
On February 24, 2026, Plaintiff's counsel filed an affirmation of service [FN23]
that on February 23, 2026, Defendant was served with Plaintiff's Pre-Inquest Disclosure.
Defendant failed to file any pre-inquest disclosure.

 Inquest
On February 26, 2026, an inquest was held before the undersigned wherein appearances were made by Plaintiff and Plaintiff's counsel, and Defendant failed to appear or request an adjournment. Accordingly, the inquest proceeded in the absence of Defendant. At inquest, Plaintiff was the only witness to provide testimony. Following completion of the inquest, a court transcript was filed [FN24]
and reflects the exhibits admitted into evidence.

Legal Analysis
A. Witness Credibility.
The Second Department Appellate Division has held that the determination of witness credibility is to be determined by the trier of fact:
"The credibility of the witnesses, the reconciliation of conflicting statements, a determination of which should be accepted and which rejected, the truthfulness and accuracy of the testimony, whether contradictory or not, were issues for the trier of the facts. The memory, motive, mental capacity, accuracy of observation and statement, truthfulness and other tests of the reliability of witnesses can be passed upon with greater safety by a trial judge who sees and hears the witnesses than by appellate judges who simply read the printed record" (Barnet v. Cannizzaro, 3 AD2d 745 [2d Dept 1957] [internal citations omitted).It has been recognized that in the context of matrimonial proceedings, "[s]ince the court had the opportunity to view the demeanor of the witnesses at the hearing, it was in the best position to gauge their credibility, and its resolution of credibility issues is entitled to great deference on appeal" (Lieberman v. Lieberman, 21 AD3d 1004 [2d Dept 2005] [internal citations omitted]).
Based upon the demeanor and substance of the testimony of Plaintiff, the Court finds that Plaintiff is a credible witness. The Court made this determination based upon an assessment of the Plaintiff's character, temperament and sincerity. At inquest, Plaintiff responded to all questions presented in a clear and direct manner.
B. Grounds for Dissolution of the Parties' Marriage.
Pursuant to New York State Domestic Relations Law § 170(7):
"An action for divorce may be maintained by a husband or wife to procure a judgment divorcing the parties and dissolving the marriage on any of the following grounds:* * *(7) The relationship between husband and wife has broken down irretrievably for a period of at least six months, provided that one party has so stated under oath. No judgment of divorce shall be granted under this subdivision unless and until the economic issues of equitable distribution of marital property, the payment or waiver of spousal support, the payment of child support, the payment of counsel and experts' fees and expenses as well as the custody and visitation with the infant children of the marriage have been resolved by the parties, or determined by the court and incorporated into the judgment of divorce."A spouse's statement under oath that the marriage was irretrievably broken for a period of six months is, by itself, sufficient to establish a cause of action for divorce as a matter of law (see Hoffer-Adou v Adou, 121 AD3d 618 [1st Dept 2014]).
During the inquest, as reflected by the so-ordered and filed inquest transcript (hereinafter "Inquest Transcript"),[FN25]
Plaintiff testified that the parties had been married twice, the first time in February of 2011 having thereafter divorced in June of 2020.[FN26]
 Plaintiff's Exhibits 4A and 4B were admitted into evidence being the findings of fact and conclusions of law, and judgment of divorce from the parties' prior matrimonial action commenced in the New York State Supreme Court, County of Bronx, known as [Redacted], under Index Number [Redacted].[FN27]
Plaintiff testified that the parties married a second time on November 2, 2023,[FN28]
 after having reconciled after the fifth-grade graduation of A.S., which Defendant attended.[FN29]

Plaintiff testified that while the parties had no children together, that she has raised her Grandchildren, who have resided with her since they were babies.[FN30]
When asked about the breakdown of the parties' relationship, Plaintiff testified to Defendant having engaged in domestic violence during the parties' first marriage,[FN31]
 while she had believed he had changed this conduct, Plaintiff confirmed that domestic violence occurred again in the second marriage, describing one incident wherein she was attacked by Defendant with her Grandchildren present:
"Q. Now, did there come a time where something happened that caused concern for you in your home regarding your marriage?A. Yes.Q. Can you tell us what that was?A. In April of 2024 we were having a disagreement, and I guess he didn't like the fact that I was trying to defend myself. My granddaughter was in the dining room with me as we were going back and forth. We were babysitting my brother-in-law's dog at the time, [Redacted]. We were babysitting the dog for a week.Q. The dog's name is [Redacted]?A. [Redacted]. And my grandson was upstairs. So I don't — I just don't remember what the argument was about, but he put his hands around my neck.Q. "He" being B.B.?A. B.B. put his hands around my neck because he wanted me to shut up. He didn't want [*6]me to, you know, fight back. My granddaughter started screaming and telling him to take his hands off his — off her grandma's neck, and he eventually did. Then my grandson came downstairs. He kind of heard the last minute of the commotion. He said to B.B., don't talk to my grandma like that, you don't talk to my grandma, you don't yell at my grandma. He basically threatened my grandson and told him to shut up or he is going to do something to him.Q. Be specific.A. He told my grandson to shut the fuck up, this is a grown-up issue, you have nothing to do with it, and I will beat your ass."[FN32]
Plaintiff further testified about her concern for Defendant's inappropriate physical contact with A.S. which she asserted made the child uncomfortable and which Defendant did not stop once asked to do so:
"Q. Now, were there any issues between him and your granddaughter?A. Yes, in October of last year.Q. Go ahead. Walk us through it, please.A. A.S. had fractured her right collarbone playing at a friend's house. They were pillow fighting. A.S. tripped over a pillow, and then her friend tripped over her and landed on her collarbone, so she fractured her collarbone. Great deal of pain. Towards the end of October, I guess B.B. was trying to be cordial, so that's what I wanted to believe, and she was on the sunporch preparing her makeup, as she always does before she leaves to go to school, and he touched her waistline.Q. Okay.A. And it made her feel very, very uncomfortable.Q. How old was she at the time?A. Twelve.Q. Did you say something to him?A. Well, I did the next day, because A.S., when she came back into the dining room after doing her makeup, she was shaking. I didn't know what it was. So she asked me, she said, grandma, did you look at your text message. Now, this was like 8:10 in the morning. I said no. She said, well, I sent you a text message. So I opened up my phone, and I looked at her text message. She said, grandma, grandpa just touched me on my waistline and it made me feel very, very uncomfortable.Q. So did you speak to him about it?A. Yes, I did.Q. What did you say to him, and what did he say to you?A. I told him that A.S. spoke to me about him touching her and it made her feel uncomfortable, and I would appreciate it if he does not touch her again.Q. And what did he say?A. He said he wouldn't touch her again.Q. And did he?A. Yes, he did.Q. When did he again?A. Right before Christmas.Q. Okay. How many more times did he touch her?A. Twice. Rubbed her on her back and then he soothed her hand. But it was always when no one was around. Like I was upstairs. D.A. might have been downstairs. It was always an excuse.Q. At some point you asked him to leave?A. Yes, I did. I told him he had to leave."[FN33]
Based upon the submissions made to this Court, along with the testimony and evidence received at the Inquest, Plaintiff's request is granted to the extent that a judgment be entered granting Plaintiff a divorce in her favor and against Defendant, dissolving forever the bonds of matrimony existing between Plaintiff and Defendant upon the grounds of the Irretrievable Breakdown of the Relationship pursuant to DRL § 170(7).
C. Equitable Distribution of Marital Assets, Declaration of Separate Property and Allocation of Debts.
The Appellate Division, Second Department has noted the manner in which a trial court is to make a determination as to equitable distribution in the context of a matrimonial action:
"The Equitable Distribution Law mandates that, whenever a marriage is terminated, absent an agreement of the parties, the court must determine the rights of the parties in their separate and marital property and provide for the disposition of the property in the final judgment (see Domestic Relations Law § 236[B][5][a]).* * *The court is obligated to render a decision in which it sets forth the factors it considered and the reasons for its decision, a requirement that cannot be waived (see Domestic Relations Law § 236[B][5][g]). In the absence of express findings of fact and of a detailed discussion of the enumerated factors, meaningful appellate review is precluded and a remittal for further fact finding may be required (see Gape v. Gape, 110 AD2d 621, 487 N.Y.S.2d 111; see also Kluge v. Kluge, 159 AD2d 968, 552 N.Y.S.2d 771). Facts must be sufficiently developed at trial to enable a reasoned determination of the issues of equitable distribution and, if not, a new trial may be ordered (see Madu v. Madu, 135 AD3d 836, 837, 24 N.Y.S.3d 678; McLoughlin v. McLoughlin, 74 AD3d 911, 915, 903 N.Y.S.2d 467) (Kaufman v Kaufman, 189 AD3d 31, 52 [2d Dept. 2020])."The New York State Domestic Relations Law § 236[B][5] notes, in part, that:
"b. Separate property shall remain such.c. Marital property shall be distributed equitably between the parties, considering the circumstances of the case and of the respective parties.d. In determining an equitable disposition of property under paragraph c, the court shall consider:(1) the income and property of each party at the time of marriage, and at the time of the commencement of the action;(2) the duration of the marriage and the age and health of both parties;(3) the need of a custodial parent to occupy or own the marital residence and to use or own its household effects;(4) the loss of inheritance and pension rights upon dissolution of the marriage as of the date of dissolution;(5) the loss of health insurance benefits upon dissolution of the marriage;(6) any award of maintenance under subdivision six of this part;(7) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party. The court shall not consider as marital property subject to distribution the value of a spouse's enhanced earning capacity arising from a license, degree, celebrity goodwill, or career enhancement. However, in arriving at an equitable division of marital property, the court shall consider the direct or indirect contributions to the development during the marriage of the enhanced earning capacity of the other spouse;(8) the liquid or non-liquid character of all marital property;(9) the probable future financial circumstances of each party;(10) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party;(11) the tax consequences to each party;(12) the wasteful dissipation of assets by either spouse;(13) any transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;(14) whether either party has committed an act or acts of domestic violence, as described in subdivision one of section four hundred fifty-nine-a of the social services law, against the other party and the nature, extent, duration and impact of such act or acts;(15) in awarding the possession of a companion animal, the court shall consider the best interest of such animal. "Companion animal", as used in this subparagraph, shall have the same meaning as in subdivision five of section three hundred fifty of the agriculture and markets law; and(16) any other factor which the court shall expressly find to be just and proper.e. In any action in which the court shall determine that an equitable distribution is appropriate but would be impractical or burdensome or where the distribution of an interest in a business, corporation or profession would be contrary to law, the court in lieu of such equitable distribution shall make a distributive award in order to achieve equity between the parties. The court in its discretion, also may make a distributive award to supplement, facilitate or effectuate a distribution of marital property.* * *g. In any decision made pursuant to this subdivision, the court shall set forth the factors it considered and the reasons for its decision and such may not be waived by either party or [*7]counsel."The Court is not required to engage in a "point-by-point catechistic discussion" of each factor under DRL § 236B(5)(d) (see Sykes v Sykes, 43 Misc 3d 1220[A], *4 [Sup Ct, NY County 2014]). "There is no requirement that the distribution of each item of marital property be made on an equal basis (see DeSouza—Brown v Brown, 71 AD3d at 946, 897 N.Y.S.2d 228; Peritore v. Peritore, 66 AD3d 750, 752-753, 888 N.Y.S.2d 72; Griggs v. Griggs, 44 AD3d 710, 713, 844 N.Y.S.2d 351)" (Baumgardner v Baumgardner, 98 AD3d 929, 931 [2d Dept 2012]). And if the court determines that one spouse engaged in domestic violence against the other that has impacted the spouse emotionally, financially, and reputationally, the court can provide the spouse who engaged in the domestic violence a decreased distributive award of the martial assets (see J.N. v T.N., 77 Misc 3d 894 [Sup Ct, NY County 2022]).
When engaging in a determination as to equitable distribution of marital assets, it is incumbent upon the trial court to evaluate the level of economic partnership of the parties to the subject marriage, through contributions made financially and in other respects:
"In making an equitable distribution of marital property, the trial court is vested with broad discretion and, in the absence of an improvident exercise of that **646 discretion, its determination should not be disturbed (see Schwartz v. Schwartz, 67 AD3d 989, 990, 890 N.Y.S.2d 71; Saleh v. Saleh, 40 AD3d 617, 617—618, 836 N.Y.S.2d 201). When both spouses equally contribute to a marriage of long duration, the division of marital property should be as equal as possible; however, equitable distribution does not necessarily mean equal distribution (see Bernholc v. Bornstein, 72 AD3d 625, 628, 898 N.Y.S.2d 228; Adjmi v. Adjmi, 8 AD3d 411, 412—413, 779 N.Y.S.2d 80; Moyston v. Jarrett, 198 AD2d 216, 603 N.Y.S.2d 500). "Equitable distribution is 'based on the premise that a marriage is, among other things, an economic partnership to which both parties contribute as spouse, parent, wage earner or homemaker' " (K. v. B., 13 AD3d 12, 17, 784 N.Y.S.2d 76, quoting O'Brien v. O'Brien, 66 NY2d 576, 585, 498 N.Y.S.2d 743, 489 N.E.2d 712). "The distribution of marital assets depends not only on the financial contribution of the parties 'but also on a wide range of nonremunerated services to the joint enterprise, such as homemaking, raising children and providing the emotional and moral support necessary to sustain the other spouse in coping with the vicissitudes of life outside the home' " (K.v B., 13 AD3d at 17, 784 N.Y.S.2d 76, quoting Brennan v. Brennan, 103 AD2d 48, 52, 479 N.Y.S.2d 877)." (Davis v. O'Brien, 79 AD3d 695 [2d Dept 2010]).Furthermore, when there are inconsistencies or outright misrepresentations among financial records, sworn affidavits, and testimony, and a party is recalcitrant in providing financial document disclosure, the Court may find that the party lacks credibility and draw a negative inference related to those discrepancies (see Racquel L.J. v. Derwin J.J., 64 Misc 3d 1221, 2019 NY Slip Op 51219 [Sup Ct, Kings County 2019]). The unequal distribution of marital assets has been determined appropriate due to finding of a spouse engaging in conduct constituting economic fault such as dissipation of marital assets (see Stewart v. Stewart, 133 AD3d 493 [2d Dept 2015]).
It is further appropriate for the Court to allocate responsibility for the payment of debts between the parties involved in a matrimonial action (see Goddard v. Goddard, 256 AD2d 545 [2d Dept 1998]; see also Dellafiora v. Dellafiora, 54 AD3d 715 [2d Dept 2008]).
In making determinations as to equitable distribution, declaration of separate property, and allocation of debts, this Court has taken into consideration the allegations of domestic violence made by Plaintiff against Defendant, which have gone unrefuted by Defendant who has defaulted in this action despite being advised of his rights and obligations with respect to this litigation. The Court has further taken into consideration Defendant's defaults in this litigation including his disregarding Court directives including that he appear for conferences and inquest, and his failure to comply with his legal obligations to engage in financial disclosure which have frustrated this Court's ability to make determinations as to the issues arising out of the requested dissolution of the parties' marriage (see Rodolico v. Rodolico, 109 AD3d 809 [2d Dept 2013]; see also Goldsmith v. Goldsmith, 184 AD2d 619 [2d Dept 1992] ["Broad pretrial disclosure enabling both spouses to obtain necessary information regarding the value and nature of the marital assets is deemed critical if the trial court is to properly distribute the marital assets"]). Though this Court clearly instructed Defendant to complete and file a statement of net worth with financial disclosure, he failed to do so. He further appears to have engaged in perjury [FN34]
before this Court by advising that his monthly income from disability was $1,650.00, when Plaintiff's Exhibit 6 was admitted at inquest reflecting Defendant's monthly income from Social Security as $2,179.50.[FN35]

Moreover, this Court has considered the lack of any true economic partnership between the parties during their marriage due to the domestic violence noted above, Defendant's lack of financial support of Plaintiff's Grandchildren,[FN36]
 Defendant having maintained a separate domicile during the entirety of the parties' marriage,[FN37]
 Defendant not assisting Plaintiff with her vehicle [*8]payments,[FN38]
 Defendant not providing Plaintiff with financial contributions into her accounts,[FN39]
and, Defendant not assisting with Plaintiff's mortgage payments.[FN40]
 The Court noted Plaintiff's testimony at inquest including the following:
"A. No. He didn't contribute. He continued to pay rent at his apartment even though he was coming to my house off and on.Q. Did he contribute in any ways to the home?A. He bought food, you know. He bought food. Because I was paying all the bills. But he did buy food.Q. Did he take on any of the bills?A. No."[FN41]
Based upon the submissions made to this Court, along with the testimony and evidence received at the inquest, and the Court's review of each of the factors set forth within the DRL noted above, the Plaintiff's request is granted to the extent that:
1. Equitable Distribution and Declaration of Separate Property —
a. Account #1; (2) Account #2; (3) Account #3; (4) Account #4At inquest, Plaintiff's Exhibits 11A and 11B were admitted into evidence, being statements for Plaintiff's financial accounts at USAlliance.[FN42] Plaintiff testified that her financial accounts are only in her name, that she is the only person who deposits funds into those accounts from her income and KinGap for the care of her Grandchildren,[FN43]
which Plaintiff requested that she be awarded sole interest in same.[FN44]

Based upon the submissions made to this Court, along with the evidence and testimony received at inquest, Plaintiff is hereby awarded sole ownership, title and interest in Account #1, Account #2, Account #3, and Account #4.b. Plaintiff's 401(k)At inquest, Plaintiff's Exhibits 12A and 12B, were admitted in evidence, being statements [*9]for Plaintiff's 401(k).[FN45] Plaintiff testified that these are her retirement accounts,[FN46]
and requested that she be awarded sole interest in same.[FN47]
Based upon the submissions made to this Court, along with the evidence and testimony received at inquest, Plaintiff is hereby awarded sole ownership, title and interest in Plaintiff's 401(k).c. New Rochelle PropertyPlaintiff testified that she purchased the New Rochelle Property in prior to the parties' marriage in February of 2021 with the deed titled solely in her name, and identified the deed to the property which was admitted into evidence as Plaintiff's Exhibit 5 reflecting a transfer date to Plaintiff of February 3, 2021.[FN48] Plaintiff further testified that the New Rochelle Property is encumbered by a mortgage for which she is the sole borrower and the only individual who provides payment towards the mortgage,[FN49]
 identifying a mortgage statement which was admitted into evidence as Plaintiff's Exhibit 13.[FN50]
Plaintiff requested that she be awarded sole ownership of the New Rochelle Property.[FN51]
Based upon the submissions made to this Court, along with the evidence and testimony received at inquest, Plaintiff is hereby awarded sole ownership, title and interest in the New Rochelle Property; is further awarded exclusive use and occupancy of same; and, shall be solely responsible for any mortgages, other encumbrances and carrying costs associated with same.d. Chevy TraxAt inquest, Plaintiff's Exhibit 10 was admitted into evidence, being a lien release pertaining to the Chevy Trax.[FN52] Plaintiff testified that the vehicle was purchased before the parties' marriage, was initially financed and later paid off by her without any assistance from Defendant,[FN53]
and asked to be awarded sole ownership of the vehicle.[FN54]
Based upon the submissions made to this Court, along with the evidence and testimony received at inquest, Plaintiff is hereby awarded sole ownership, title and interest in the Chevy Trax; and, shall be solely responsible for any notes, other encumbrances and carrying costs associated with same.e. Other PropertyOther than as set forth herein, each party shall retain sole ownership, title and interest to all property, tangible, real or otherwise in each parties' possession, custody and control, including, but not limited to: (1) financial accounts; (2) tangible personal property; (3) real property; (4) retirement accounts, and (5) all other property.
2. Debts —
a. Debt #8 — MortgageAs per the determination made above, Plaintiff has been awarded sole ownership, as well as exclusive use and occupancy of the New Rochelle Property for which Debt #8 — Mortgage is an encumbrance. Therefore, it is equitable that Plaintiff be solely responsible for the payment of this debt.Based upon the submissions made to this Court, along with the evidence and testimony received at inquest, Plaintiff is hereby allocated sole responsibility for the payment of Debt #8 — Mortgage.b. Debt #1, Debt #2, Debt #3, Debt #4, Debt #5, Debt #6, Debt #7, Debt #9, and Debt #10At inquest, Plaintiff testified that she has considerable credit card debt, acknowledging that some of it may have accrued during the parties' marriage and is not requesting Defendant be responsible for the payment of same.[FN55]
Based upon the submissions made to this Court, along with the evidence and testimony received at inquest, Plaintiff is hereby allocated sole responsibility for the payment of Debt #1, Debt #2, Debt #3, Debt #4, Debt #5, Debt #6, Debt #7, Debt #9, and Debt #10.c. Other DebtsOther than as set forth herein, each party shall be solely responsible for any debts held in their respective names, including, but not limited to, mortgages, notes, lines of credit, student loans, personal loans, leases, credit cards, etc.
D. Plaintiff's Request as to Spousal Support and Maintenance.
A party in a matrimonial action may waive spousal maintenance and support (see Messina v. Messina, 533 N.Y.S.2d 298 [2d Dept 1988]).
At inquest, Plaintiff testified that she is employed at [Redacted] as a [Redacted],[FN56]
 and is not seeking an award of spousal maintenance from Defendant.[FN57]
This Court has been provided with no testimony or evidence pertaining to the income, assets or debts of Defendant other than as set forth herein.
Based upon the submissions made to this Court, along with the testimony and evidence [*10]received at the inquest, Plaintiff's request is granted to the extent that neither party shall be required to provide spousal maintenance and support to the other.
E. Plaintiff's Request That Pursuant to DRL § 240-a, Either Party Be Authorized To Resume The Use of a Pre-Marriage Name.In the context of a matrimonial action, trial courts have the authority to grant parties the request to resume the use of prior pre-marriage names.
Based upon the submissions made to this Court, along with the testimony and evidence received at the Inquest, both parties may resume the use of any pre-marriage sur-names, including but not limited to, Defendant's maiden name "[Redacted]."
F. Child Custody, Child Support & Adult Dependent Support.Based upon the submissions made to this Court, along with the testimony and evidence received at the inquest, the Court determines that there are no children or adult dependents of the marriage, and therefore takes no action with respect to child custody or support, or adult dependent support.
G. Attorneys' Fees and Litigation Costs.The Appellate Division Second Department has noted how trial court should determine if an award of attorneys' fees is warranted in a matrimonial action:
"In a matrimonial action, an award of attorney's fees is a matter committed to the sound discretion of the trial court, and the issue is controlled by the equities and circumstances of each particular case. The purpose of Domestic Relations Law § 237(a) is to redress the economic disparity between the monied spouse and the nonmonied spouse by ensuring that the latter will be able to litigate the action on equal footing with the former.In determining whether to award attorney's fees, the court should review the financial circumstances of both parties, together with all of the other circumstances of the case, including, inter alia, the relative merit of the parties' positions, and whether either party has engaged in conduct or taken positions resulting in a delay of the proceedings or unnecessary litigation."(Brockner v Brockner, 174 AD3d 567 [2d Dept 2019] [internal citations omitted]).At inquest, Plaintiff testified that she is not seeking for Defendant to be responsible for any attorneys' fees she has incurred during this litigation.[FN58]

Based upon the submissions made to this Court, along with the testimony and evidence received at the inquest, this Court determines that both parties shall be solely responsible for the legal fees and costs arising out of this action that they have incurred.
H. Other Relief.Any relief specifically not granted or otherwise addressed herein is denied.
* * *
Based upon the foregoing, it is herebyORDERED that Plaintiff is granted a Judgment of Divorce against Defendant, dissolving forever the bonds of matrimony existing between Plaintiff and Defendant upon the grounds of the Irretrievable Breakdown of the Relationship pursuant to DRL § 170(7), in addition to the ancillary relief as decided herein; and it is further
ORDERED that by March 6, 2026, Plaintiff's counsel shall serve overnight traceable delivery this Decision and Order with Notice of Entry on Defendant, and shall file an Affidavit of Service by March 6, 2026; and it is further
ORDERED that by March 13, 2026, Plaintiff's counsel shall file with the Court, with notice of settlement on Defendant by traceable overnight delivery, with proof of service, the following documents:
(1) Proposed Findings of Fact & Conclusions of Law;(2) Proposed Judgment of Divorce;(3) All other ancillary documents needed for this Court to enter a Judgment of Divorce; and it is furtherORDERED that to the extent any relief sought has not been granted, it is expressly denied.
The foregoing constitutes the Decision and Order of the Court. 
Dated: March 3, 2026White Plains, New YorkENTER:HON. JAMES L. HYER, J.S.C.

Footnotes

Footnote 1:See, NYSCEF Doc. No. 1.

Footnote 2:See, NYSCEF Doc. No. 2.

Footnote 3:See, NYSCEF Doc. No. 3.

Footnote 4:See, NYSCEF Doc. Nos. 4-5.

Footnote 5:See, NYSCEF Doc. Nos. 6.

Footnote 6:See, NYSCEF Doc. Nos. 8-9.

Footnote 7:See, NYSCEF Doc. No. 59, 2/4/26 Transcript.

Footnote 8:See, NYSCEF Doc. No. 59, 2/4/26 Transcript, Pg. 13:12-20.

Footnote 9:See, NYSCEF Doc. No. 59, 2/4/26 Transcript, Pg. 3:19-25-Pg. 5:1-12; see also, NYSCEF Doc. Nos. 10-11.

Footnote 10: See, 12 NYCRR § 202.16(f)(1) ["(f) Preliminary Conference.

(1) In all actions or proceedings to which this section of the rules is applicable, a preliminary conference shall be ordered by the court to be held within 45 days after the action has been assigned. Such order shall set the time and date for the conference and shall specify the papers that shall be exchanged between the parties. These papers must be exchanged no later than 10 days prior to the preliminary conference, unless the court directs otherwise [emphasis added]. These papers shall include:
(i) statements of net worth, which also shall be filed with the court no later than 10 days prior to the preliminary conference;
(ii) all paycheck stubs for the current calendar year and the last paycheck stub for the immediately preceding calendar year;
(iii) all filed State and Federal income tax returns for the previous three years, including both personal returns and returns filed on behalf of any partnership or closely held corporation of which the party is a partner or shareholder;
(iv) all W-2 wage and tax statements, 1099 forms, and K-1 forms for any year in the past three years in which the party did not file State and Federal income tax returns;
(v) all statements of accounts received during the past three years from each financial institution in which the party has maintained any account in which cash or securities are held;
(vi) the statements immediately preceding and following the date of commencement of the matrimonial action pertaining to:
(a) any policy of life insurance having a cash or dividend surrender value; and
(b) any deferred compensation plan of any type or nature in which the party has an interest including, but not limited to, Individual Retirement Accounts, pensions, profit- sharing plans, Keogh plans, 401(k) plans and other retirement plans.]

Footnote 11:See, NYSCEF Doc. No. 59, 2/4/26 Transcript, Pg. 21:18-25-Pg. 23:1-12.

Footnote 12:See, NYSCEF Doc. No. 13.

Footnote 13:See, NYSCEF Doc. Nos. 14-15.

Footnote 14:See, NYSCEF Doc. No. 57.

Footnote 15:See, NYSCEF Doc. No. 57, 2/13/26 Transcript, Pg. 2:10-25-Pg. 3:1-5.

Footnote 16:See, NYSCEF Doc. No. 16.

Footnote 17:See, NYSCEF Doc. No. 17.

Footnote 18:See, NYSCEF Doc. No. 18.

Footnote 19:See, NYSCEF Doc. No. 19, admitted into evidence at inquest as Plaintiff's Exhibit 7, and re-filed as NYSCEF Doc. No. 48.

Footnote 20:See, NYSCEF Doc. No. 21.

Footnote 21:See, NYSCEF Doc. No. 22.

Footnote 22:See, NYSCEF Doc. Nos. 23-38.

Footnote 23:See, NYSCEF Doc. No. 40.

Footnote 24:See, NYSCEF Doc. No. 58.

Footnote 25:See, NYSCEF Doc. No. 58.

Footnote 26:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 10:7-15.

Footnote 27:See, NYSCEF Doc. Nos. 44-45.

Footnote 28:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 9:11-14.

Footnote 29:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 13:15-25-Pg.

Footnote 30:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 10:16-25-Pg. 11:1-17.

Footnote 31:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 16:1-5.

Footnote 32:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 14:22-25-Pg. 15:1-25.

Footnote 33:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 16:6-25-Pg. 17:1-25.

Footnote 34:See, New York State Penal Law § 210.15 ["A person is guilty of perjury in the first degree when he swears falsely and when his false statement (a) consists of testimony, and (b) is material to the action, proceeding or matter in which it is made."]; see also, People v. Hadid, 121 AD3d 811 [2d Dept 2014] ["To establish that a person is guilty of perjury in the first degree, the prosecution must prove, beyond a reasonable doubt, that the person has sworn falsely and that the false statement consists of testimony that is material to the action, proceeding, or matter in which it is made."]; People v. Doody, 72 A.D. 372 [3d Dept 1902 ["The statutes defining perjury, and providing the punishment therefor, are designed to prevent the failure of justice"]; People v. Russo, 124 Misc 2d 438 [Cty Ct, Suffolk 1984] ["Defendant could be charged with perjury and making apparently sworn false statement for filing allegedly false financial disclosure statement in divorce action since statute mandating full and complete financial disclosure in all matrimonial actions and imposing civil remedies for violating that mandate did not make civil penalties the sole and exclusive remedy for a violation."]).

Footnote 35:See, NYSCEF Doc. No. 47; see also, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 19:9-21.

Footnote 36:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 12:2-6.

Footnote 37:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 18:6-11.

Footnote 38:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 20:5-7.

Footnote 39:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 20:10-25-Pg. 21:1-4.

Footnote 40:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 24:13-23.

Footnote 41:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 25:17-24.

Footnote 42:See, NYSCEF Doc. Nos. 52-53.

Footnote 43:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 20:10-25-Pg. 22:1-22.

Footnote 44:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 25:10-14.

Footnote 45:See, NYSCEF Doc. Nos. 54-55.

Footnote 46:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 22:24-25-Pg. 23:1-20.

Footnote 47:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 25:10-14.

Footnote 48:See, NYSCEF Doc. No. 46.

Footnote 49:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 24:13-23.

Footnote 50:See, NYSCEF Doc. No. 56.

Footnote 51:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 25:10-14.

Footnote 52:See, NYSCEF Doc. No. 51.

Footnote 53:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 19:22-25-Pg. 20:1-9.

Footnote 54:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 25:10-14.

Footnote 55:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 24:24-25-Pg. 25:1-9

Footnote 56:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 10:2-6.

Footnote 57:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 26:21-25-Pg. 1-20.

Footnote 58:See, NYSCEF Doc. No. 58, Inquest Transcript, Pg. 26:2-4.